# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| POWER INTEGRATIONS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 19-1292-LPS |
| ) | |
| SILANNA SEMICONDUCTOR NORTH ) | |
| AMERICA, INC., ) | |
| ) | |
| Defendant. ) | |

## DEFENDANT SILANNA SEMICONDUCTOR NORTH AMERICA'S
## OPENING BRIEF IN SUPPORT OF ITS MOTION TO DISMISS

OF COUNSEL

Micha Danzig
Paul M. Huston
MINTZ LEVIN COHN FERRIS
GLOVSKY & POPEO, P.C.
3580 Carmel Mountain Rd.
Suite 300
San Diego, CA 92130

Dated: September 3, 2019

Philip A. Rovner (#3215)
Jonathan A. Choa (#5319)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
P.O. Box 951
Wilmington, DE 19899-0951
(302) 984-6000

*Attorneys for Defendant*
*Silanna Semiconductor North America, Inc.*

# **TABLE OF CONTENTS**

INTRODUCTION……………………………………………………………………………...1

STATEMENT OF RELEVANT FACTS……………………………………………….………1

ARGUMENT…………………………………………………………………………………...2

    I.    THE COMPLAINT FAILS TO STATE A CLAIM FOR VIOLATION OF THE DTSA (COUNT I)………………………………………………………...3

        A.    The Complaint Fails to Sufficiently Identify the Alleged "Trade Secret"...3

        B.    The Complaint Fails to Allege Misappropriation…………………………6

    II.    THE COMPLAINT FAILS TO STATE A CLAIM FOR INTERFERENCE WITH CONTRACTUAL RELATIONS (COUNT II)……………………………9

        A.    Interference with Contractual Relations Requires the "Breach" of an Enforceable Contract……………………………………………………...9

            1.    California Law Applies to Plaintiff's Interference with Contractual Relations Claim……………………………………..10

            2.    Non-Compete Agreements are Unenforceable in California and Cannot Serve as A Predicate for an Interference with Contractual Relations Claim……………………………………..11

            3.    Non-Solicit Agreements are Unenforceable and Cannot Serve as A Predicate for an Interference with Contractual Relations Claim……………………………………………………….12

        B.    The Complaint Alleges No Facts to Support a "Breach" of Any Confidentiality Agreement…………………………………………………….13

        C.    The Complaint Fails to Specify What Contracts Silanna is Alleged to Have Interfered With…………………………………………………………14

    III.    THE COMPLAINT FAILS TO STATE A CLAIM FOR INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE (COUNT III)………….. 14

CONCLUSION…………………………………………………………………………..16

# TABLE OF AUTHORITIES

**CASES**

Page(s)

*123 Exteriors, Inc. v. N. Star Exteriors, LLC*,
  No. 17-4337, 2018 U.S. Dist. LEXIS 128748 (E.D. Pa. Aug. 1, 2018) ....................................6

*Accenture Global Servs. GMBH v. Guidewire Software, Inc.*,
  581 F. Supp. 2d 654 (D. Del. 2008) ...................................................................................7, 8

*AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc.*,
  28 Cal. App. 5th 923 (2018) ..................................................................................................12

*Application Grp. v. Hunter Grp.*,
  61 Cal. App. 4th 881 (1998) ..................................................................................................11

*Ascension Ins. Holdings, Ltd. Liab. Co. v. Underwood*,
  C.A. No. 9897-VCG, 2015 Del. Ch. LEXIS 19 (Del. Ch. Jan. 28, 2015) ......................... 10-11

*Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex.*,
  571 U.S. 49 (2013) .................................................................................................................10

*Barker v. Insight Glob., LLC*,
  No. 16-cv-07186-BLF, 2019 U.S. Dist. LEXIS 6523 (N.D. Cal. Jan. 11, 2019) .............. 12-13

*Bayer Corp. v. Roche Molecular Sys.*,
  72 F. Supp. 2d 1111 (N.D. Cal. 1999) ....................................................................................13

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................................................................2

*Eastman Chem. Co. v. AlphaPet, Inc.*,
  C.A. No. 09-971-LPS-CJB, 2011 U.S. Dist. LEXIS 127757, 2011 WL
  5402767 (D. Del. Nov. 4, 2011) .....................................................................................4, 5, 6

*eCOMMERCE Indus. v. MWA Intelligence, Inc.*,
  No. 7471-VCP, 2013 Del. Ch. LEXIS 245 (Del. Ch. Sep. 30, 2013) ...............................15, 16

*Edwards v. Arthur Andersen LLP*,
  44 Cal. 4th 937 (2008) ...........................................................................................................12

*Flexible Techs., Inc. v. SharkNinja Operating LLC*,
  Civil Action No. 18-348-CFC, 2019 U.S. Dist. LEXIS 55794 (D. Del. Mar.
  29, 2019) .............................................................................................................................. 3-4

*In re Frederick's of Hollywood, Inc. S'holders Litig.*,
  C.A. No. 15944, 1998 Del. Ch. LEXIS 111 (Del. Ch. July 9, 1998) .......................................9

*Gill v. Del. Park, L.L.C.*,
  294 F. Supp. 2d 638 (D. Del. 2003) ........................................................................................9

*Ideal Dairy Farms v. John Labatt, Ltd.*,
  90 F.3d 737 (3d Cir. 1996) .....................................................................................................15

*Inter Med. Supplies, Ltd. v. Ebi Med. Sys.*,
  181 F.3d 446 (3d Cir. 1999) ...................................................................................................15

*McMillan v. Intercargo Corp.*,
  768 A.2d 492 (Del. Ch. 2000) ............................................................................................. 2-3

*NuVasive Inc. v. Patrick Miles*,
  C.A. No. 2017-0720, 2019 WL 4010814 (Del. Ch., Aug. 26, 2019) .....................................11

*Spear Pharms., Inc. v. William Blair & Co.*,
  610 F. Supp. 2d 278 (D. Del. 2009) .........................................................................................4

*SriCom, Inc. v. eBisLogic, Inc.*,
  No. 12-CV-00904-LHK, 2012 U.S. Dist. LEXIS 131082 (N.D. Cal. Sep. 13,
  2012) ......................................................................................................................................12

*Weride Corp. v. Huang*,
  No. 18-cv-07233-EJD, 2019 U.S. Dist. LEXIS 55996 (N.D. Cal. Apr. 1, 2019) ...................13

*Whyte v. Schlage Lock Co.*,
  101 Cal. App. 4th 1443 (2002) ..............................................................................................13

**STATUTES**

                                                                             **Page(s)**

18 U.S.C. § 1839(3) ........................................................................................................................3

18 U.S.C. §§ 1839(5) ......................................................................................................................6

California Business and Professions Code § 16600 ............................................................... 11-12

**OTHER AUTHORITIES**

                                                                             **Page(s)**

FED. R. CIV. P. 12(b)(6) ......................................................................................... *passim*

## INTRODUCTION

Plaintiff Power Integrations, Inc.'s ("Plaintiff" or "Power Integrations") Complaint should be dismissed in its entirety.  This action is an attempted runaround attack on the fundamental public policy rights of California employees and businesses to enjoy mobile employment and engage in free commerce as established by California's well-settled policies prohibiting non-competition and non-solicitation provisions.  The Complaint compounds its offense with an obvious attempt to circumvent another deeply rooted public policy by alleging trade secret misappropriation while never identifying an actual trade secret nor any act of misappropriation.  Because each cause of action fails to state a cognizable claim for relief, dismissal of the Complaint is proper under Fed. R. Civ. P. 12(b)(6).

## STATEMENT OF RELEVANT FACTS

This case arises from Edison D. De Lara's ("De Lara"), Charles Reyes Evangelista's ("Evangelista"), Stuart Hodge Jr.'s ("Hodge"), Ian B. Barrameda's ("Barrameda") and Alex F. Mariano's ("Mariano") (collectively, the "Silanna Employees") separation from Power Integrations and their subsequent employment with Defendant Silanna Semiconductor North America, Inc. ("Silanna") in California.  Complaint ¶¶ 7–51.  Power Integrations is a supplier of electronic components used in high-voltage power-conversion systems.  Complaint ¶ 7.  Penbrothers International Inc. ("Penbrothers") is a staffing company located in the Philippines that connects Filipino engineers and other highly skilled workers with companies throughout the world.  Complaint ¶ 9.  Silanna is a semiconductor company located in San Diego, California.  Complaint ¶ 2.  De Lara, Evangelista, Barrameda, and Mariano are each former Power Integrations employees.  Complaint ¶¶ 7–51.

Power Integrations alleges, in remarkably vague and general terms, that during the course of their employment, the Silanna Employees were "exposed" to Power Integrations' proprietary information. *See, e.g.*, Complaint, ¶¶ 10, 18, 26, 34, 40. Specifically, Power Integrations alleges the Silanna Employees were "exposed to highly proprietary and sensitive information relating to Power Integrations' future product plans and designs, research and development, patentable technologies, particularized costing information, bill of materials, customer acquisition, business opportunities and strategies, marketing and sales projects, and business plans relating to Power Integrations' new and future products (*hereinafter* 'Power Integrations Future Product Trade Secrets')". Complaint, ¶¶ 10, 18, 26, 34, 40.

Power Integrations also vaguely alleges that when the Silanna Employees left their employment with Power Integrations, they were able to gain subsequent employment because of their exposure Power Integrations' trade secrets. Complaint, ¶¶ 16, 24, 32, 38. Based on nothing more than these remarkably vague, speculative and conclusory allegations, Power Integrations brings the instant action.

## ARGUMENT

A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 548 (2007). The factual allegations within the claim "must be enough to raise a right to relief above the speculative level." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. A complaint does not suffice "if it tenders 'naked assertion[s]'devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). In deciding a Rule 12(b)(6) motion, the Court "will not rely upon conclusory allegations of wrongdoing . . .

unsupported by pled facts." *McMillan v. Intercargo Corp.*, 768 A.2d 492, 500 (Del. Ch. 2000).

Each of Power Integrations' claims arise from a simple, speculative and conclusory narrative that falls far short of stating facts sufficient to support a legal claim for relief. In that sense, each claim suffers from the same essential flaw. Power Integrations alleges the Silanna Employees had access to various purported trade secrets and, at Silanna's bidding, left their employment with Power Integrations to work for Silanna. Based on these and no other facts, Power Integrations concludes the Silanna Employees *must have* disclosed some trade secret information, making Silanna liable for inducing the even more vaguely alleged breaches and misappropriation of trade secrets under the DTSA.

## I. THE COMPLAINT FAILS TO STATE A CLAIM FOR VIOLATION OF THE DTSA (COUNT I)

Power Integrations' claim for misappropriation of trade secrets pursuant to the DTSA is deficient because it does not allege facts sufficient to establish the necessary elements of the claim. Specifically, the Complaint does not identify: (1) what Power Integrations' alleged "trade secrets" are; or (2) what improper use Silanna is alleged to have made of them. On either basis, Power Integrations' trade secret misappropriation claim should be dismissed.

### A. The Complaint Fails to Sufficiently Identify the Alleged "Trade Secret"

The Complaint fails to assert factual allegations supporting the most basic element of a misappropriation claim: existence of a trade secret. A trade secret under the DTSA is information that: (a) the owner has taken reasonable measures to keep secret; and (b) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from its disclosure or use. 18 U.S.C. § 1839(3). In order to make out a claim under the DTSA, the plaintiff must "identify a trade secret with sufficient particularity so as to provide

3

notice to a defendant of what he is accused of misappropriating and for a court to determine whether misappropriation has or is threatened to occur." *Flexible Techs., Inc. v. SharkNinja Operating LLC*, Civil Action No. 18-348-CFC, 2019 U.S. Dist. LEXIS 55794, at *5-6 (D. Del. Mar. 29, 2019).

Power Integrations' Complaint is remarkably devoid of facts alleging a specific trade secret. Instead, the Complaint simply identifies broad areas wherein trade secrets *might possibly exist* without ever identifying the trade secrets themselves.  As such the Complaint utterly fails to give Silanna "notice . . . of what [it] is accused of misappropriating." *See id*.  Specifically, the Complaint weakly attempts to define Plaintiff's trade secrets as the following:

> Power Integrations' future produce plans and designs, *including but not limited to* product specifications, product forecasts, definitions, designs, research and development, patentable technologies, particularized costing information, bill of materials, customers acquisitions, business opportunities and strategies, marketing and sales projects, and business plans relating to Power Integrations new and future products.

Complaint ¶ 10 (emphasis added).

Silanna cannot defend itself against open-ended, incomplete, unintelligible and obscure definitions of information that are described with vague titles like "definitions, designs…business opportunities…business plans."  Complaint ¶ 53.  Indeed, District courts have regularly dismissed trade secrets claims where the pleadings used similarly broad and vague definitions of the alleged trade secret information.  *See Eastman Chem. Co. v. AlphaPet, Inc.*, No. 09-971-LPS-CJB, 2011 U.S. Dist. LEXIS 127757, at *6 (D. Del. Nov. 4, 2011) (trade secrets claim inadequately pled where "complaint provided almost no guidance as to the nature of the alleged trade secret, leaving the defendant to guess . . ."); *cf. Spear Pharms., Inc. v. William Blair & Co.*, 610 F. Supp. 2d 278, 283-84 (D. Del. 2009) (holding plaintiff stated a claim where plaintiff alleged identity of individual that allegedly leaked confidential information,

4

time frame in which information leaked, specific content of leaked information, opportunity and motive for the leak, precise manner in which leaked information used to harm plaintiff, and temporal sequence of events supporting connection between defendants and plaintiff's harm).[1]

Similarly, in *Medafor, Inc. v. Starch Medical Inc.*, the court dismissed plaintiff's claims for breach of a confidentiality provision in a contract based on misappropriation of trade secrets where the plaintiff "failed to plead any facts to support its allegation that [the defendant] stole its trade secrets" beyond the single fact that the plaintiff's former employee was now working for the defendant. No. 09-Cv-441, 2009 U.S. Dist. LEXIS 61345 at *4 (D. Minn. July 16, 2009). Specifically, plaintiff's "complaint describe[d] the trade secrets at issue as 'business methodologies, formulas, devices, and compilations of information, including suppliers and customers...'" *Id*. at *3. A court in this District noted that "[t]he Medafor complaint provided almost no guidance as to the nature of the alleged trade secret, leaving the defendant to guess at which of the legions of its unidentified 'methodologies, formulas, devices, and compilations of information' was alleged to have been wrongfully misappropriated." *Eastman Chem.,* 2011 U.S. Dist. LEXIS 127757, at *16-17. In distinguishing *Medafor*, the *Eastman* court found that in its case, the plaintiff sufficiently pleaded its trade secrets by providing fourteen specific and discrete references to IntegRex™ technology, which properly notified the defendant of the name of the technology at issue. *Id*.

---

[1] District Court cases applying state law are instructive here because "[i]t is well-accepted that the DTSA is in general comport with state trade secret law. While the DTSA largely conforms with state trade secret laws, the House and the Senate committees did not intend to alter the balance of current trade secret law or alter specific court decisions on misappropriation. Thus, existing state law on trade secrets informs the Court's application of the DTSA." *Corp. Claims Mgmt. v. Shaiper* (In re Patriot Nat'l Inc.), 592 B.R. 560, 577 (Bankr. D. Del. 2018) [internal citations omitted].

Power Integration's trade secret "definition" is worse than the definition rejected by the *Medafor* court, as it provides Silanna with almost no guidance as to the nature of the alleged trade secret and leaves Silanna to simply guess which "definitions, designs, …business opportunities…business plans […]" it is charged with misappropriating. Complaint ¶ 53. The Complaint also falls far short of the facts alleged in *Eastman* where the plaintiff identified the at-issue technology by name and identified the processes relating to the technology. *Eastman Chem. Co.* No. 09-971-LPS-CJB, 2011 U.S. Dist. LEXIS 127757, at *4-5. Here, Power Integration cryptically states that part of its trade secrets include "patentable technologies" without actually identifying a single technology. *See* Complaint ¶¶ 10, 53. Defendant cannot possibly ascertain the alleged trade secrets that are supposed to be at issue based on such uninformative and plainly vague descriptions.

Because Power Integrations failed to identify the specific trade secret it alleges merits DTSA protection, neither this Court nor Defendant can understand the precise nature of the claims in this case. Therefore, this Court should dismiss the DTSA claim against Defendant.

### B. The Complaint Fails to Allege Misappropriation

Even if Power Integrations had adequately identified its trade secrets, it has not alleged sufficient facts to establish misappropriation. The DTSA defines "misappropriation" as the "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means;" or the "disclosure or use" of a trade secret without the consent of the owner. 18 U.S.C. §§1839(5)(A)-(B). *See also 123 Exteriors, Inc. v. N. Star Exteriors, LLC*, No. 17-4337, 2018 U.S. Dist. LEXIS 128748, at *19-20 (E.D. Pa. Aug. 1, 2018)

Nowhere does the Complaint state how Silanna misappropriated any of Power Integrations' alleged "trade secrets." At most, there are only conclusory assertions that the

6

Silanna Employees were "exposed" to some alleged trade secrets and that the Silanna Employees were able to gain employment with Silanna "as a result of their knowledge" of Power Integrations' information. *See*, *e.g.*, Complaint, ¶¶ 16, 24, 32, 38. The Complaint then alleges in highly speculative and conclusory fashion, and solely upon "information and belief," that Silanna has used Power Integrations' trade secrets to "unfairly compete." Complaint, ¶¶ 47, 60, 64, 81. In essence, the entirety of Power Integrations' allegation of misappropriation is Power Integrations' clearly unsupported speculation that the Silanna Employees were "exposed to" Power Integrations Future Product Trade Secrets and that this "exposure" must have been the reason they were able to gain subsequent employment with Silanna.

These speculative and conclusory allegations are also insufficient to meet the requirement that a plaintiff alleging misappropriation must plead facts to the effect that "the secret information [has] been improperly . . . used or disclosed by the defendant to the injury of the plaintiff." *Accenture Global Servs. GMBH v. Guidewire Software, Inc.*, 581 F. Supp. 2d 654, 662 (D. Del. 2008). In *Accenture*, the court dismissed the plaintiff's misappropriation of trade secret claim under the DTSA because the plaintiff had only alleged that, based on a set of circumstances, it "assume[d] . . . that [the defendant] ha[d] 'somehow' obtained and used [the plaintiff's] trade secrets." 581 F. Supp. 2d at 663. The court specifically found that the plaintiff's complaint:

> …presents nothing more than 'conclusions' and a 'formulaic recitation of elements of a cause of action.' With respect to the theft of its trade secrets, Accenture states only the following: Accenture worked with CNA, during which time it learned about Guidewire; Accenture installed ACCS software on CNA's computers in late 2002; CNA informed Accenture in 2003 that its bid had lost; and Accenture later learned that Guidewire had the winning bid. Accenture assumes, based upon what it feels was 'a surprisingly quick development trajectory," that Guidewire has 'somehow' obtained and used Accenture's trade secret.'

*Id.*

7

As in *Accenture*, the Complaint contains nothing beyond conclusions and formulaic recitations of the elements of a cause of action by alleging that on "information and belief," Silanna has used Power Integrations' trade secrets to "unfairly compete." Complaint, ¶¶ 47, 60, 64, 81. Power Integrations also embraces the leap in logic asserted in *Accenture* by claiming that as a "newcomer in the industry" Silanna could not have known to place engineers near sales offices, implying that it must have relied on "misappropriations" of Power Integrations' trade secrets in doing so. Complaint, ¶ 16, 24, 32, 38, 49, 50, 65. The Complaint makes no attempt to connect these non-sequiturs or to identify what Power Integrations "knowledge" Silanna allegedly used in making staffing decisions.

Without identify any particular use, or identifying which of the so-called trade secrets were allegedly used, Power Integrations should not be allowed to move its case forward in the hopes of getting access to Silanna's information so that it can later pick and choose what to specifically identify as the supposed misappropriation of Power Integrations' trade secret. *See* 581 F. Supp. 2d at 663-65 ("Accenture is not entitled to conduct a fishing expedition based upon such bare allegations; its DUTSA claim is dismissed.") (citing *Knights Armament Co. v. Optical Systems Technology, Inc.*, No. Civ. A. 07-1323, 568 F. Supp. 2d 1369, 2008 U.S. Dist. LEXIS 59999, 2008 WL 2944649, *5 (M.D. Fla. July 15, 2008) (dismissing UTSA counterclaim under *Twombly* where defendant stated that plaintiffs had access to the secrets through business dealings, but '[gave] no further details as to how [they] allegedly used the trade secrets.)).'"

Rather than alleging specific trade secrets or any methods or means of misappropriation, the Complaint again mirrors *Medafor* and relies entirely on the unremarkable fact that former Power Integrations employees, De Lara, Evangelista, Hodge, Barrameda, and Mariano, are now working for Silanna. Complaint ¶¶ 16, 24, 32, 38. The established case law demonstrates that a

8

trade secret complaint based on such benign facts, without more, should be dismissed under Federal Rule of Civil Procedure 12(b)(6).

## II. THE COMPLAINT FAILS TO STATE A CLAIM FOR INTERFERENCE WITH CONTRACTUAL RELATIONS (COUNT II)

### A. Interference with Contractual Relations Requires the "Breach" of an Enforceable Contract

The Complaint alleges that Defendant unlawfully interfered with "the employment agreements between Power Integrations and its current and former employees, including De Lara, Evangelista, Barrameda, and Mariano." Complaint ¶ 74. Specifically, Power Integrations claims each of the Silanna Employees breached their respective agreements with Power Integrations by violating a non-compete provision. *See* Complaint ¶ 11 (De Lara); ¶ 19 (Evangelista); ¶ 27 (Barrameda); ¶¶ 57 (Mariano); ¶¶ 57, 59 (Hodge)); a non-solicit provision (Complaint ¶¶ 11, 17, 48, 50, 60 (De Lara) ¶¶ 19, 35, 48, 50, 60 (Evangelista); ¶¶ 27, 33, 48, 50, 60 (Barrameda); ¶¶ 35, 48, 50, 60 (Mariano)); and/or a confidentiality provision (Complaint ¶¶ 13, 16 (De Lara); ¶¶ 21, 24 (Evangelista); ¶¶ 29, 32 (Barrameda); ¶¶ 35, 38 (Mariano)) ¶¶ 42, 43 (Hodge). However, none of the three alleged contractual agreements can provide a basis for an Interference with Contractual Relations Claim because they are not enforceable.

No cause of action for interference with contact can lie where there is no "valid contract" *In re Frederick's of Hollywood, Inc. S'holders Litig.*, Consolidated C.A. No. 15944, 1998 Del. Ch. LEXIS 111, at *17 (Del. Ch. July 9, 1998). Another essential condition is that there be an actual breach of the underlying contract. *Gill v. Del. Park, L.L.C.*, 294 F. Supp. 2d 638, 645 (D. Del. 2003) ("Under Delaware law, a claim for tortious interference with a contract has five elements: (1) a valid contract; (2) about which the defendants have knowledge; (3) an intentional act by the defendants that is a significant factor in causing the breach of the contract; (4) done without justification; and (5) which causes injury") (emphasis added) (dismissing cause of action

9

for tortious interference with contract because "plaintiff's complaint is defective on its face as it fails to allege the existence of a valid contract.").

### 1. California Law Applies to Plaintiff's Interference with Contractual Relations Claim

In order to determine whether the Complaint alleges a valid contract, the underlying non-compete and non-solicitation agreements must be examined for validity under California law. *Ascension Ins. Holdings, Ltd. Liab. Co. v. Underwood*, No. 9897-VCG, 2015 Del. Ch. LEXIS 19, at *18 (Del. Ch. Jan. 28, 2015) (holding California law applied to a determination of validity of a non-compete agreement despite a Delaware choice of law clause, because the agreement applied to a California worker, and thus involved a non-waivable fundamental public policy of California). Notably, Power Integrations is also currently attempting to enforce the non-compete and non-solicitation provisions in Mariano, De Lara, Barrameda, and Evangelista's employment agreements in a separate lawsuit currently pending in the Northern District of California (C.A. No. 5:19-cv-02700-SVK).

A federal court applies the choice-of-law rules of the forum state to state common law claims. *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 65 (2013) ("A federal court sitting in diversity ordinarily must follow the choice-of-law rules of the State in which it sits."). In their related Northern District of California action against their former employees, Power Integrations asserts that the underlying contracts have a controlling Filipino choice-of-law provision. While Delaware law generally accepts a choice-of-law clause, it will not "where the parties enter a contract which, absent a choice-of-law provision, would be governed by the law of a particular state" and that "state has a public policy under which a contractual provision would be limited or void." *Ascension*, 2015 Del. Ch. LEXIS 19, at *6. Here, absent a choice of law provision, California law would apply to the underlying contracts

because they concern <u>employees now working in California for a company headquartered in California (Silanna)</u>. *See* Complaint ¶¶ 2, 37;, 2015 Del. Ch. LEXIS 19, at *6 (finding that California had the strongest contact to the contract where the contract was "entered between a California resident and a Delaware limited liability company that has its principal place of business in California.").

It is settled law that non-competition (and more recently, employee non-solicitation) provisions implicate the fundamental public policy of California of prohibiting unfair restraints on trade. *See Application Grp. v. Hunter Grp.*, 61 Cal. App. 4th 881, 904 (1998) (California law applied and invalidated non-compete provision in employment agreement with Maryland choice of law clause). Indeed, the Delaware Court of Chancery court recently granted a defendant partial summary judgment motion in a case where the plaintiff alleged breaches of non-compete and employee non-solicitation provisions contained in an employment agreement. The court did so based in part on its finding that "Delaware's interest in freedom of contract is a fundamental but general interest, and is manifestly outweighed by California's interest in overseeing conditions of employment relationships in that State. Therefore, [the court] find[s] California's policy interest to substantially outweigh Delaware's interest [with regard to enforcement of non-solicitation covenants] here." *NuVasive Inc. v. Patrick Miles*, C.A. No. 2017-0720, 2019 WL 4010814, at *7 (Del. Ch., Aug. 26, 2019). The court in *NuVasive Inc. v. Patrick Miles* also referenced its earlier decision that "California's policy interest [in prohibiting non-compete provisions] materially exceeds Delaware's interest in freedom of contract; consequently, [the court] applied California law, under which the non-compete provision is void." *Id.* at * 1.

> 2. *Non-Compete Agreements are Unenforceable in California and Cannot Serve as A Predicate for an Interference with Contractual Relations Claim*

California Business and Professions Code section 16600 renders void any contract that

11

has for its purpose or effect to restrain trade. It is well-established law that section 16600 renders non-compete agreements void ab initio, in their entirety. *Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937 (2008). An invalid non-compete provision is not an enforceable contract. As the Northern District of California has plainly stated, "*Section 16600, read in light of Edwards, is a clear prohibition on any noncompetition clause that does not fit into one of the statutory exceptions. . . . As the clause is undeniably a noncompetition clause that restrains employees from engaging in a lawful profession, trade, or business, it too is void under Section 16600. Accordingly, SriCom has not alleged the existence of a valid and enforceable contract, and Defendants' motion to dismiss this claim is GRANTED as to the noncompetition clause.*" *SriCom, Inc. v. eBisLogic, Inc.*, No. 12-CV-00904-LHK, 2012 U.S. Dist. LEXIS 131082, at *14 (N.D. Cal. Sep. 13, 2012) (emphasis added).

Power Integrations seeks to ignore section 16600 and *Edwards* in using the non-compete agreements signed by De Lara, Evangelista, Barrameda, and Mariano as a predicate for its interference with contractual relations claim against Silanna. However, because Power Integrations has not alleged a valid and enforceable contract, the interference with contractual relations claim as to the non-compete agreements fails. *See id.*

       3. *Non-Solicit Agreements are Unenforceable and Cannot Serve as A Predicate for an Interference with Contractual Relations Claim*

Power Integrations' non-solicitation provisions likewise cannot serve as a predicate for an interference with contractual relations claim. Following the recent decision of *AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc.*, 28 Cal. App. 5th 923 (2018), there is no dispute that employee non-solicitation provisions are invalid under section 16600. Just this year, in reconsidering a prior ruling following the decision in *AMN*, the Northern District of California held that "California law is properly interpreted post-*Edwards* to invalidate employee

12

nonsolicitation provisions." *Barker v. Insight Glob., LLC*, No. 16-cv-07186-BLF, 2019 U.S. Dist. LEXIS 6523, at *8 (N.D. Cal. Jan. 11, 2019); *accord Weride Corp. v. Huang*, No. 18-cv-07233-EJD, 2019 U.S. Dist. LEXIS 55996 at *32–34 (N.D. Cal. Apr. 1, 2019). As such, the non-solicitation provisions are not a "valid and enforceable contract," and cannot form the basis of an interference with contractual relations claim.

### B. The Complaint Alleges No Facts to Support a "Breach" of Any Confidentiality Agreement

Power Integrations also vaguely alleges that each of the Silanna Employees breached their applicable confidentiality agreements in support of its interference with contractual relations claim. Complaint ¶¶ 13, 16 (De Lara); ¶¶ 21, 24 (Evangelista); ¶¶ 29, 32 (Barrameda); ¶¶ 35, 38 (Mariano) ¶¶ 42, 43 (Hodge).

Each alleged breach is completely lacking in specific factual detail concerning what specific information was allegedly taken, as well as when or how it was purportedly disclosed. Instead, the claim is predicated entirely on the doctrine of "inevitable disclosure," which California wholly rejects. *See Whyte v. Schlage Lock Co.*, 101 Cal. App. 4th 1443, 1446 (2002).

The inevitable disclosure doctrine relies on the assumption that if an employee possesses confidential or trade secret information and later works for a competitor, the disclosure of the proprietary information is inevitable. Stated another way, "[u]nder that doctrine, the employee may be enjoined by demonstrating the employee's new job duties will inevitably cause the employee to rely upon knowledge of the former employer's trade secrets." *Id.* at 1446. There is no lack of clarity, however, concerning the standing of this theory of liability in California: "Lest there be any doubt about our holding, our rejection of the inevitable disclosure doctrine is complete." *Id*. at 1463. Instead, "[a] trade-secrets plaintiff must show an actual use or an actual threat." *Bayer Corp. v. Roche Molecular Sys.,* 72 F. Supp. 2d 1111, 1120 (N.D. Cal. 1999)

13

(granting a motion to dismiss under 12(b)(6) where the complaint lacked clear facts supporting actual disclosure).

Here, the Complaint is utterly devoid of any facts showing that the Silanna Employees actually took, used, or shared with Defendant any confidential or trade secret information. The closest is the Complaint's conclusory assertions that the Silanna Employees were able to gain employment with Silanna "as a result of their knowledge" of Power Integrations' information. *See*, *e.g.*, Complaint, ¶¶ 16, 24, 32, 38. Accordingly, there are only conclusory statements and no facts supporting a claim that Defendant interfered with any of the Silanna Employees' confidentiality agreements. Without such facts, the Complaint is relegated to relying on the indisputably void doctrine of inevitable disclosure. Because the alleged underlying breaches are either based on unlawful provisions or lack facts supporting an actual breach, the claim for interference with contractual relations must fail.

### C. The Complaint Fails to Specify What Contracts Silanna is Alleged to Have Interfered With

The claim further fails under 12(b)(6) for lack of specificity. Power Integrations includes in the claim Defendants' interference with the employment agreements of "current and former employees," without specifying the employees. Although De Lara, Evangelista, Barrameda, and Mariano are each listed, the claim clearly includes <u>current</u> and former employees: none of the Silanna Employees is a current employee of Power Integrations, so the claim plainly encompasses unknown employees with unknown contracts and unknown relations to the Defendant.

### III. THE COMPLAINT FAILS TO STATE A CLAIM FOR INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE (COUNT III)

Power Integrations' claim for Interference with Prospective Economic Advantage ("IPEA") fails because the Complaint does not allege facts demonstrating that Silanna was acting

14

to injure Plaintiff rather than pursuing profits-seeking activities.

"This tort requires proof of five elements: (1) plaintiff's expectation of economic benefit; (2) defendant's knowledge of that expectation; (3) defendant's wrongful, intentional interference with that expectancy; (4) the reasonable probability of benefit to the plaintiff in the absence of that wrongful interference; and (5) damages." *Inter Med. Supplies, Ltd. v. Ebi Med. Sys.,* 181 F.3d 446, 461 n.2 (3d Cir. 1999). "To establish a claim of tortious interference with prospective economic advantage, [plaintiff] must present concrete evidence that [defendant] intentionally and maliciously interfered with a 'protectable right,' and that [defendant's] interference caused injury." *Ideal Dairy Farms v. John Labatt, Ltd.,* 90 F.3d 737, 747 (3d Cir. 1996) [emphasis added]. "'The [defendant] must have 'sought not to achieve permissible financial goals but sought maliciously or in bad faith to injure the plaintiff.'" *eCOMMERCE Indus. v. MWA Intelligence, Inc.,* No. 7471-VCP, 2013 Del. Ch. LEXIS 245, at *127 (Del. Ch. Sep. 30, 2013) [emphasis added]. Interference based on lawful competition is not actionable. *See generally id.*, at *133-35 [internal citations omitted].

Power Integrations' IPEA claim is specifically predicated on Defendant's alleged interference with the unlawful non-compete and non-solicit provisions (Complaint ¶ 81), none of which constitute "protectable rights." Power Integrations' IPEA claim is further predicated on Defendant's alleged interference with Power Integrations' relationships with unnamed and unknown "current and recently separated employees" without alleging any specific "protectable right" with respect to those individuals. Complaint ¶ 81. The Complaint also fails specify what prospective economic relationships have been harmed by such alleged unlawful act. In fact, the Complaint provides no allegations that Silanna, rather than acting in pursuit of lawful financial goals, instead sought maliciously or in bad faith to injure the plaintiff. *See eCOMMERCE*

15

*Indus.*, 2013 Del. Ch. LEXIS 245, at *127. Accordingly, the IPEA claim fails and should be dismissed.

## CONCLUSION

Power Integrations' entire Complaint boils down to vague allegations that former employees have possession of unknown and uncertain information, which somehow constitute trade secrets for unspecified reasons, and possibly disclosed it to a competitor. In addition to predicating claims based on blatantly illegal contractual provisions, the sheer lack of factual specificity and support that permeates the Complaint renders it so vague and uncertain as to deprive Defendant of its right to understand the basis of the claims against it. For these reasons, the Court should dismiss the Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6).

OF COUNSEL

Micha Danzig
Paul M. Huston
Mintz Levin Cohn Ferris
Glovsky & Popeo, P.C.
3580 Carmel Mountain Rd.
Suite 300
San Diego, CA 92130

Dated: September 3, 2019
6364215

POTTER ANDERSON & CORROON LLP

By: */s/ Philip A. Rovner*
    Philip A. Rovner (#3215)
    Jonathan A. Choa (#5319)
    Hercules Plaza
    P.O. Box 951
    Wilmington, DE 19899-0951
    (302) 984-6000

*Attorneys for Defendant*
*Silanna Semiconductor North America, Inc*