IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| POWER INTEGRATIONS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 19-1292-LPS |
| | ) | |
| SILANNA SEMICONDUCTOR NORTH AMERICA, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S ANSWERING BRIEF IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS**

OF COUNSEL:
David J. Miclean
Limin Zheng
MICLEAN GLEASON LLP
411 Borel Avenue, Suite 310
San Mateo, CA 94402
(650) 684-1181

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
David M. Fry (No. 5486)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
dfry@shawkeller.com
*Attorneys for Plaintiff Power Integrations,
Inc.*

Dated: September 17, 2019

# TABLE OF CONTENTS

I.      NATURE AND STAGE OF PROCEEDINGS ....................................................1

II.     SUMMARY OF ARGUMENTS ...................................................................1

III.    STATEMENT OF FACTS ...........................................................................2

        A.    Power Integrations Entered into Non-Disclosure and Limited
              Restrictive Covenants with Its Employees to Safeguard Its
              Trade Secrets ........................................................................................2

        B.    Silanna Conspired with Former Power Integrations Employees
              and a Staffing Agency to Secretly Raid Power Integrations'
              Philippine-Based Engineers for Power Integrations' New and
              Future Product Trade Secrets ...............................................................3

IV.     ARGUMENT .............................................................................................5

        A.    Power Integrations Is Only Required to Plead Sufficient Facts
              to Give Silanna Fair Notice What the Claims Are .................................5

        B.    Power Integrations Has Sufficiently Pled Its DTSA Claim ...................6

              1.    Power Integrations has put Silanna on notice of the trade
                    secrets involved ...........................................................................7

              2.    Power Integrations has put Silanna on notice of the
                    misappropriation involved ...........................................................9

        C.    Power Integrations Has Sufficiently Pled Its Interference with
              Contractual Relations Claim .............................................................10

              1.    The laws of the Republic of the Philippines apply to
                    Power Integrations' contracts with its Philippine-based
                    employees ..................................................................................11

              2.    The limited restrictive covenants are valid and
                    enforceable even under California law ....................................15

                    a.    *Non-compete* .....................................................................15

                    b.    *Non-Solicitation* ..............................................................16

              3.    Power Integrations has alleged actual breach of the
                    confidentiality provisions .........................................................18

              4.    Power Integrations has identified the contracts Silanna
                    interfered with ...........................................................................19

        D.    Power Integrations Has Sufficiently Pled Its Interference with
              Prospective Economic Advantage Claim ............................................19

V.      CONCLUSION .......................................................................................20

## TABLE OF AUTHORITIES

<u>Cases</u>

*Accenture Global Services GmbH v. Guidewire Software Inc.*, 581 F. Supp. 2d 654 (D. Del. 2008) ............................................................................................ 9

*AMN Healthcare, Inc. v. Aya Healthcare Services, Inc.*, 28 Cal. App. 5th 923 (2018) .................................................................................................................... 17

*Application Grp., Inc. v. Hunter Grp., Inc.*, 61 Cal. App. 4th 881 (1998) ................................. 13

*Arthur J. Gallagher & Co. v. Lang*, No. C 14-0909 CW, 2014 U.S. Dist. LEXIS 71286 (N.D. Cal. May 23, 2014).................................................. 17, 18

*Ascension Ins. Holdings, LLC v. Underwoo*d, No. 9897-VCG, 2015 Del. Ch. LEXIS 19 (Del. Ch. Jan. 28, 2015)................................................................. 11

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ......................................................................... 6

*Asset Marketing Sys., Inc. v. Gagnon*, 542 F.3d 748 (9th Cir. 2008) ................................... 15, 16

*Bank of Am., N.A. v. Lee*, Case No. CV 08-5546 CAS(JWJx), 2008 U.S. Dist. LEXIS 110410 (C.D. Cal. Sept. 22, 2008) ................................................ 15, 16

*Barker v. Insight Global, LLC*, No. 16-cv-07186-BLF, 2019 U.S. Dist. LEXIS 6523 (N.D. Cal. Jan. 11, 2019) .............................................................. 18

*Bell Atlantic Corp.* v. *Twombly,* 550 U.S. 544 (2007)............................................................ 5, 6

*Dominion Enters. v. LinkUSystems, Inc.*, Case No. SACV 11-1852 DOC (ANx), 2012 U.S. Dist. LEXIS 195813 (C.D. Cal. Feb. 16, 2012) ........................... 17, 18

*Eastman Chem. Co. v. AlphaPet Inc.*, No. 09-971-LPS-CJB, 2011 U.S. Dist. LEXIS 127757 (D. Del. Nov. 4, 2011) ................................................... 7, 9, 10

*Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937 (2008)........................................................ 15

*Erickson v. Pardus*, 551 U.S. 89 (2007) ........................................................................ 6

*Fairchild Semiconductor Corp. v. Power Integrations, Inc.*, 935 F. Supp. 2d 772 (D. Del. 2013) ............................................................................................. 5

*Flexible Techs., Inc. v. SharkNinja Operating LLC*, No. 18-348-CFC, 2019 U.S. Dist. LEXIS 55794 (D. Del. Mar. 29, 2019) ........................................... 7

*Foman v. Davis*, 371 U.S. 178 (1962) ........................................................................ 20

*Fres-co Sys. USA, Inc. v. Hawkins*, 690 F. App'x 72 (3d Cir. 2017) .................................... 10, 18

*In re Burlington Coat Factory Sec. Litig*., 114 F.3d 1410 (3d Cir. 1997)...................................... 6

*J.S. Alberici Constr. Co. v. Mid-W. Conveyor Co.*, 750 A.2d 518 (Del. 2000)........................... 11

*Jazz Pharms., Inc. v. Synchrony Grp., LLC*, 343 F. Supp. 3d 434 (E.D. Penn. 2018) ................................................................................................ 10

*Kan Di Ki, LLC v. Suer*, No. 7937-VCP, 2015 Del. Ch. LEXIS 191 (Del. Ch. July 22, 2015) ........................................................................................ 11

*Loral Corp. v. Moyes*, 174 Cal. App. 3d 268 (1985) ............................................. 16, 18

*Medafor, Inc. v. Starch Med. Inc.*, No. 09-CV-0441 PJS/FLN, 2009 U.S. Dist. LEXIS 61345 (D. Minn. July 16, 2009) ......................................................... 9

*Muggill v. Reuben H. Donnelley Corp.*, 62 Cal. 2d 239 (1965) ................................... 15

*New Zealand Kiwifruit Mktg. Bd. v. City of Wilmington*, 825 F. Supp. 1180 (D. Del. 1993) ............................................................................................. 11

*NuVasive, Inc. v. Miles*, No. 2017-0720-SG, 2018 Del. Ch. LEXIS 329 (Del. Ch. Sept. 28, 2018) ..................................................................................... 13

*NuVasive, Inc. v. Miles*, No. 2017-0720-SG, 2019 Del. Ch. LEXIS 325 (Del. Ch. Aug. 26, 2019) ....................................................................................... 13

*Physician's Surrogacy, Inc. v. German*, No.: 17CV0718-MMA (WVG), 2017 U.S. Dist. LEXIS 135325 (S.D. Cal. Aug. 23, 2017) ..................................... 8

*Reeves v. Hanlon*, 33 Cal. 4th 1140 (2004) ......................................................... 19, 20

*Rivera v. Solidbank*, G.R. No. 163269 (Apr. 19, 2006) ............................................ 14

*Rockwell Collins, Inc. v. Wallace*, SACV 17-01369 AG (JCGx), 2017 U.S. Dist. LEXIS 190361 (C.D. Cal. Nov. 10, 2017) ............................................... 8

*So Ping Bun v. Court of Appeals*, G.R. No. 120554 (Sept. 21, 1999) ......................... 11

*Sonic Auto., Inc. v. Mohammed Younis*, No. 15-CV-00717 RGK (AGRx), 2015 U.S. Dist. LEXIS 190427 (C.D. Cal. May 6, 2015) ................................... 16, 18

*SriCom, Inc. v. eBisLogic, Inc.*, No. 12-CV-00904-LHK, 2012 U.S. Dist. LEXIS 131082 (N.D. Cal. Sept. 13, 2012) ..................................................... 16

*Thomas Weisel Partners LLC v. BNP Paribas*, No. C 07-6198 MHP, 2010 U.S. Dist. LEXIS 11626 (N.D. Cal. Feb 10, 2010) ......................................... 17, 18

*Victaulic Co. v. Tieman*, 499 F.3d 227 (3d Cir. 2007) ............................................... 6

*Wanke, Industrial, Commercial, Residential, Inc. v. Keck*, 209 Cal. App. 4th 1151 (2012) ........................................................................................ 15, 16

*Weride Corp. v. Huang*, 379 F. Supp. 3d 834 (N.D. Cal. 2019) .................................. 18

*XpertUniverse, Inc. v. Cisco Sys., Inc.*, No. 09-157 (JAP), 2011 U.S. Dist. LEXIS 31922 (D. Del. Mar. 28, 2011) .......................................................... 7

**<u>Statutes</u>**

18 U.S.C. § 1836 ................................................................................................ 6

18 U.S.C. § 1839 ................................................................................................ 6

Fed. R. Civ. P. 15 ............................................................................................ 20

Fed. R. Civ. P. 8 .............................................................................................. 5

**<u>Other</u>**

David Bohrer, *Threatened Misappropriation of Trade Secrets: Making A Federal (DTSA) Case Out of It*, 33 Santa Clara High Tech. L.J. 506 (2017) ........................................................................................................... 8

Timoteo B. Aquino, Torts and Damages (2d ed. 2005) ............................ 11, 19

## I.   NATURE AND STAGE OF PROCEEDINGS

On July 11, 2019, Power Integrations filed the instant suit against Silanna for (1) trade secret misappropriation under the Defend Trade Secrets Act ("DTSA"), (2) interference with contractual relations, and (3) interference with prospective economic advantage.  D.I. 1.  On September 3, 2019, Silanna filed the present motion to dismiss all three causes of actions.  D.I. 7.

## II.   SUMMARY OF ARGUMENTS

1.   Power Integrations has stated a claim for trade secret misappropriation under the DTSA.  At the pleading stage, Power Integrations need not identify its trade secrets with "particularity," as Silanna claims, but only enough to give Silanna fair notice.  Power Integrations has done so by stating the technology in question and the categories and types of trade secrets relating to the technology that are at issue.  In addition, contrary to Silanna's assertion, Power Integrations has alleged in detail both actual and threatened wrongful use of its trade secrets by Silanna.

2.   Power Integrations has stated a claim for interference with contractual relations based on the breach of restrictive and non-disclosure covenants by Power Integrations' former employees induced by Silanna.  The restrictive covenants with Power Integrations' Philippine-based former employees are governed by the laws of the Philippines — the jurisdiction expressly chosen by the parties to the contracts — and are enforceable even under California law.  As to the non-disclosure covenants, Silanna's assertion that Power Integrations has failed to identify an actual breach simply ignores the allegations in the Complaint.  Lastly, Silanna's protest about not knowing what contracts it is accused of interfering with falls flat in view of the contracts attached to and incorporated in the Complaint.

3.   Power Integrations has stated a claim for interference with prospective economic advantage based on Silanna's tortious interference with Power Integrations' at-will employment

relationships with its then-employees, including wrongful acts by Silanna that involved misuse of Power Integrations' confidential information and conspiracy with a Philippine-based staffing agency to raid Power Integrations' engineering employees.  Silanna's assertion that Power Integrations has failed to allege any malicious or bad faith conduct by Silanna and that Power Integrations has predicated its interference with prospective economic advantage claim on the restrictive covenants again ignores the allegations in the Complaint.

### III.     STATEMENT OF FACTS

#### A.     Power Integrations Entered into Non-Disclosure and Limited Restrictive Covenants with Its Employees to Safeguard Its Trade Secrets

Power Integrations is a leading innovator in semiconductor technologies for high-voltage power conversion and a leading supplier of cutting-edge power technologies.  D.I. 1 at ¶ 7.  To achieve its position as an industry leader, Power Integrations has invested substantial capital and resources in developing, training, and maintaining a diverse and skilled workforce of engineers who are key to Power Integrations' success.  *Id.* at ¶¶ 79-80.  For example, Power Integrations has a concentrated group of applications engineers in Manila, Philippines supporting the sales offices and who are involved in the design and planning for Power Integrations' new and future products.  This is uncommon in the industry, and Power Integrations was in fact the first in the industry to invest in a workforce in the Philippines on a large scale, after initially having doubts about the breadth and depth of the local talent pool.  *Id.* at ¶¶ 48-49.

As a leading innovator, Power Integrations has also expended considerable time, effort, and expense in developing intellectual property, including trade secrets, related to its new and future products.  *Id.* at ¶ 53.  As with any high-tech company, new and future products are Power Integrations' crown jewels and lifeblood.  *Id.*  To safeguard its trade secrets and other proprietary information, Power Integration requires its employees to maintain the confidentiality of all such information both during and after their employment with Power Integrations, and requires non-

compete and non-solicitation agreements from Philippine-based employees exposed to such information for a limited duration enough to prevent the misappropriation of the information by Power Integrations' competitors. *Id.* at ¶ 56.

Specifically, all Power Integrations employees, including those targeted and recruited by Silanna, signed confidentiality agreements with Power Integrations and agreed to safeguard Power Integrations' confidential information against disclosure to others and not to, directly or indirectly or in any manner, divulge, disclose, or communicate it to others without Power Integrations' permission. *Id.* at ¶¶ 12, 13, 20, 21, 28, 29, 35, 42, 57; D.I. 1, Exs. A-E. In addition, Power Integrations' Philippine-based employees agreed to certain restrictive covenants for a limited duration. *Id.* at ¶¶ 11, 19, 27, 35, Exs. A-D. Power Integrations' employment agreements with its U.S.-based employees are governed by California law, whereas those with its Philippine-based employees are governed by Philippine law. *See, e.g.*, D.I. 1, Ex. A at p. 9 (para XIV(g)), Ex. D at p. 2, Ex. E at p. 6 (para 13).

B.    **Silanna Conspired with Former Power Integrations Employees and a Staffing Agency to Secretly Raid Power Integrations' Philippine-Based Engineers for Power Integrations' New and Future Product Trade Secrets**

Silanna is a direct competitor of Power Integrations and a newcomer in the industry, having only recently entered the market for power products. D.I. 1 at ¶ 8. In anticipation of its product launch, Silanna sought to get a head start and unfairly compete with Power Integrations by targeting Power Integrations' Philippine-based applications engineers who had experience supporting the sales offices and possessed trade secret and other proprietary information about Power Integrations' new and future products. *Id.* at ¶¶ 46-50. Stuart Hodge, Jr. ("Hodge"), a former Director of Sales at Power Integrations who joined Silanna in November 2015, just a month after he left Power Integrations, was intimately familiar with Power Integrations' Philippine operations, and knew that Power Integrations has a concentrated group of applications

3

engineers supporting the sales offices in Manila, Philippines, and that by virtue of their positions, these engineers were exposed to Power Integrations' trade secrets about its new and future products, including business opportunities for these products. *Id.* at ¶¶ 40, 41, 43, 48. With the help of Hodge, Silanna started targeting Power Integrations' employees or former employees based in the Philippines. *Id.* at ¶ 48.

Alex F. Mariano II ("Mariano") appears to be the first former Philippine-based applications engineer of Power Integrations to join Silanna. Mariano left Power Integrations in January 2018 and joined Silanna in October 2018, a few months before the launch of Silanna's first power product. *Id.* at ¶ 36. A former Field Applications Engineer and Design Team Leader of Power Integrations, Mariano participated in the design and planning for Power Integrations' new and future products and is intimately familiar with Power Integrations' Philippine operation and has direct contacts with other Power Integrations employees in the region. *Id.* at ¶ 34. After getting Mariano on board, Silanna, with the help of Hodge, Mariano, and the Philippine-based staffing agency Penbrothers International Inc. ("Penbrothers"), started raiding Power Integrations' engineers in the Philippines, including Ian B. Barrameda ("Barrameda"), Edison De Lara ("De Lara"), and Charles Reyes Evangelista ("Evangelista"), causing a group of engineers to resign from Power Integrations and immediately join Silanna, in violation of their employment agreements. *Id.* at ¶¶ 45-51.

Knowing that the restrictive covenants between Power Integrations and its Philippine-based engineers would prevent these engineers from working for a competitor such as Silanna shortly after leaving Power Integrations, Silanna conspired with Penbrothers and former Power Integrations employees to cover its tracks. *Id.* at ¶¶ 62, 63. For example, when Barrameda resigned from Power Integrations, he informed Power Integrations that he would be joining Infineon Technologies, which is not a competitor of Power Integrations, where in fact he started

working for Silanna just weeks if not days after leaving Power Integrations.  *Id.* at ¶¶ 30, 31.  In addition, Silanna conspired with Penbrothers and developed a scheme such that Power Integrations' key engineers, including De Lara and Evangelista, were ostensibly hired and employed by Penbrothers and then assigned to work for Silanna.  *Id.* at ¶¶ 9, 63.

Silanna has targeted Power Integrations' engineers in order to use and exploit Power Integrations' trade secrets to develop and market competing products.  Using underhanded tactics, Silanna induced and caused these engineers to leave the employ of Power Integrations and breach their non-disclosure and restrictive covenants with Power Integrations, subjecting Power Integrations' trade secrets to immediate misuse by Silanna.

## IV.    ARGUMENT

### A.    Power Integrations Is Only Required to Plead Sufficient Facts to Give Silanna Fair Notice What the Claims Are

The sufficiency of the allegations in the Complaint is governed by the pleading standard of Rule 8, which requires only a "short plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2); *see also Fairchild Semiconductor Corp. v. Power Integrations, Inc.*, 935 F. Supp. 2d 772, 774-775 (D. Del. 2013).  To satisfy Rule 8, the complaint need only state "enough factual matter (***taken as true***) to ***suggest***" the required elements of the claims.  *Bell Atlantic Corp.* v. *Twombly,* 550 U.S. 544, 556 (2007).[1]

To evaluate a Rule 12(b)(6) motion to dismiss, courts apply a two-part analysis. *Fairchild*, 935 F. Supp. 2d at 775.  First, "courts separate the factual and legal elements of a claim, accepting all of the complaint's well-pleaded facts as true, but disregarding any legal conclusions."  *Id.*  This step requires courts to accept as true all material allegations of the complaint and draw all reasonable inferences in favor of the non-moving party.  *Id.*  "Second,

---

[1]  Unless otherwise specified, all emphases in this brief are added.

courts determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). That is, the facts alleged need only be sufficient to "raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact)." *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555). This determination is context-specific, requiring the Court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997).

## B.     Power Integrations Has Sufficiently Pled Its DTSA Claim

The DTSA prohibits the misappropriation of trade secrets. 18 U.S.C. § 1836(b). Under the DTSA, a trade secret is "all forms and types of financial, business, scientific, technical, economic, or engineering information" for which: (1) the owner thereof has taken reasonable measures to keep such information secret; and (2) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information. *Id.* at § 1839(3). "Misappropriation" includes the acquisition, disclosure, or use of the trade secret by "improper means," which is defined to include "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage

through electronic or other means[.]" *Id.* at § 1839(5), (6).  Under the DTSA, a court may grant an injunction to prevent any "actual or threatened" misappropriation.  *Id.* at § 1836(b)(3)(A).

Here, Power Integrations has alleged that Silanna targeted, solicited, and recruited Power Integrations' key engineers who were involved in the design and planning of — and as a result acquired the trade secrets relating to — Power Integrations' new and future products, subjecting Power Integrations' trade secrets to immediate misappropriation by Silanna.  D.I. 1 at ¶¶ 10, 16-18, 24-26, 32-34, 38-40, 43, 45-50, 53-70.  Power Integrations has also identified the trade secrets sufficient to give notice to Silanna.  *Id.* at ¶ 10 (defining "Power Integrations Future Product Trade Secrets").  Power Integrations has adequately pled its DTSA claim.  Silanna makes two arguments in support of its motion to dismiss, neither of which has merit.

### 1.    Power Integrations has put Silanna on notice of the trade secrets involved

First, Silanna argues that Power Integrations has failed to meet a "particularity" standard allegedly set forth in *Flexible Techs., Inc. v. SharkNinja Operating LLC*, No. 18-348-CFC, 2019 U.S. Dist. LEXIS 55794 (D. Del. Mar. 29, 2019), in identifying the trade secrets.  D.I. 8 at 3-4.  There is no "particularity" requirement for pleading a DTSA claim.[2]  To the contrary, under Rule 8, the touchstone of a court's inquiry "is plausibility, not probability, and whether a defendant is on notice of a claim for relief, ***not whether that claim has been pled with specificity or particularity***."  *Eastman Chem. Co. v. AlphaPet Inc.*, No. 09-971-LPS-CJB, 2011 U.S. Dist. LEXIS 127757, at *9 (D. Del. Nov. 4, 2011) (citations omitted); *XpertUniverse, Inc. v. Cisco Sys., Inc.*, No. 09-157 (JAP), 2011 U.S. Dist. LEXIS 31922, at *5 (D. Del. Mar. 28, 2011)

---

[2]  In *Flexible Technologies*, the court merely referred to ***the parties' agreement*** that the "sufficient particularity" standard under South Carolina law also applied to the DTSA claim in that case.  *See Flexible Techs.*, 2019 U.S. Dist. LEXIS 55794, at *6.  Even then, the court noted that courts "are in general agreement that trade secrets need not be disclosed in detail in a complaint alleging misappropriation[.]" *Id.* (citation omitted).

(noting that the "reasonable particularity" requirement for trade secret identification under California law may not apply in federal court, and in any event related to discovery, not pleading); *see also Rockwell Collins, Inc. v. Wallace*, SACV 17-01369 AG (JCGx), 2017 U.S. Dist. LEXIS 190361, at *5 (C.D. Cal. Nov. 10, 2017) ("First, the DTSA claim.  Federal Rule of Civil Procedure 8 doesn't include a 'particularity' requirement.  Instead, that's the pleading standard for fraud or mistake claims under Rule 9."); *Physician's Surrogacy, Inc. v. German*, No.: 17CV0718-MMA (WVG), 2017 U.S. Dist. LEXIS 135325, at *26 (S.D. Cal. Aug. 23, 2017) (finding unpersuasive Defendants' argument that Plaintiff must plead DTSA claims with particularity); David Bohrer, *Threatened Misappropriation of Trade Secrets: Making A Federal (DTSA) Case Out of It*, 33 SANTA CLARA HIGH TECH. L.J. 506, 521 (2017) (DTSA "does not incorporate the requirement . . . that . . . the plaintiff must identify its relevant trade secrets with 'reasonable particularity'").

Power Integrations has adequately identified its misappropriated trade secrets to give fair notice to Silanna.  The Complaint identifies the technology in question: high-voltage power conversion technology.  D.I. 1 at ¶¶ 7, 8.  The Complaint also identifies the category of trade secrets relating to the power conversion technology: product designs and plans relating to Power Integrations' new and future power conversion products.  *Id.* at ¶ 10.  In addition, the Complaint lists the types of trade secrets at issue: "product specifications, product forecasts, definitions, designs, research and development, patentable technologies, particularized costing information, bill of materials, customer acquisition, business opportunities and strategies, marketing and sales projections, and business plans relating to Power Integrations' new and future products."  *Id.*

Silanna takes issue with Power Integrations' use of the phrase "including but not limited to" in identifying the trade secrets.  D.I. 8 at 4.  In *Eastman*, this Court rejected the same argument by the defendant, noting that while the plaintiff used the phrase "including" almost

every time it referenced the trade secrets, it was clear what "the gravamen of its trade secret misappropriation claim" was. *Eastman*, 2011 U.S. Dist. LEXIS 127757, at *16. Here, it is clear that the gravamen of Power Integrations' trade secret misappropriation claim is Power Integrations' ***future product plans and designs relating to power conversion technology*** — the only technology at issue. *See* D.I. 1 at ¶¶ 7, 8, 10. Unlike the plaintiff in *Medafor, Inc. v. Starch Med. Inc.*, No. 09-CV-0441 PJS/FLN, 2009 U.S. Dist. LEXIS 61345 (D. Minn. July 16, 2009), a case cited by Silanna, Power Integrations has provided Silanna with sufficient guidance as to what type of technology is at issue.

### 2. Power Integrations has put Silanna on notice of the misappropriation involved

Second, ignoring Power Integrations' detailed allegations, Silanna argues that Power Integrations has failed to allege "sufficient facts to establish misappropriation." D.I. 8 at 6. Power Integrations need not "establish misappropriation" at this juncture and has alleged more than sufficient facts to establish ***plausibility***. *Eastman*, 2011 U.S. Dist. LEXIS 127757, at *9.

The Complaint alleges that Silanna improperly used Power Integrations' trade secrets Silanna obtained from Hodge, a former Power Integrations employee, in developing Silanna's power conversion products. D.I. 1 at ¶ 43. Thus, unlike the plaintiff in *Accenture Global Services GmbH v. Guidewire Software Inc.*, 581 F. Supp. 2d 654 (D. Del. 2008), another case Silanna relies on, Power Integrations' trade secret claim is not "based solely on 'conclusions' and a 'formulaic recitation of the elements of a cause of action.'" *See Eastman*, 2011 U.S. Dist. LEXIS 127757, at *26-30 (distinguishing *Accenture* and finding plaintiff's allegations that defendant "used" trade secret information sufficient to state a claim).

In addition, under the DTSA, "misappropriation of trade secrets need not have already occurred to warrant injunctive relief; threatened misappropriation is sufficient." *Jazz Pharms.,*

9

*Inc. v. Synchrony Grp., LLC*, 343 F. Supp. 3d 434, 446 n.51 (E.D. Penn. 2018) (quoting *Fres-co*

*Sys. USA, Inc. v. Hawkins*, 690 F. App'x 72, 76 (3d Cir. 2017)); *id.* at 446 & n.52 (noting that

"[t]he Third Circuit has held that where an employee's work for a new employer substantially

overlaps with work for a former employer, based on the same role, industry, and geographic

region, a district court may conclude that those employees would likely use confidential

information to the former employer's detriment").  Here, the Complaint alleges that in

anticipation of its product launch, Silanna conspired with Penbrothers and Power Integrations'

former employees to target and steal Power Integrations' key applications engineers involved in

the design and planning of Power Integrations' new and future products in order to

misappropriate Power Integrations' trade secrets relating to these products.  D.I. 1 at ¶¶ 9-39, 45-

50.  Unlike the *Accenture* complaint, which was "based strictly on supposition and assumption"

and "did no more than hint at the alleged wrongful acts," Power Integrations' Complaint "alleges

a specific illicit pathway (involving its former employees)" through which the trade secret

information was designed to flow, and alleges the time period and a set of relevant events that

was the "impetus" for the alleged threatened wrongful disclosure and use.  *See Eastman*, 2011

U.S. Dist. LEXIS 127757, at 30.

Because Power Integrations has alleged sufficient facts to give Silanna fair notice,

Silanna's motion to dismiss the trade secret misappropriation claim must be denied.

### C.    Power Integrations Has Sufficiently Pled Its Interference with Contractual Relations Claim

Under Philippine law, the elements of a tortious interference claim are: "(1) existence of

a valid contract; (2) knowledge on the part of the third person of the existence of contract; and

(3) interference of the third person is without legal justification or excuse."  *So Ping Bun v.*

*Court of Appeals*, G.R. No. 120554 (Sept. 21, 1999) (attached as Ex. 5).[3]  The Complaint alleges that Silanna knowingly interfered with Power Integrations' contractual relations with its former employees by inducing these former employees to disclose Power Integrations' confidential information, work for a direct competitor of Power Integrations' immediately after they left Power Integrations, and/or solicit other Power Integrations' engineering employees, resulting in these former employees' breach of their employment agreements, and causing harm to Power Integrations.  Power Integrations has sufficiently pled each element.  *See* D.I. 1 at ¶¶ 10-51, 71-77.  Silanna's arguments to the contrary are legally flawed and factually incorrect.

**1.     The laws of the Republic of the Philippines apply to Power Integrations' contracts with its Philippine-based employees**

"Delaware courts will generally honor a contractually-designated choice of law provision *so long as the jurisdiction selected bears some material relationship to the transaction*."  *Kan Di Ki, LLC v. Suer*, No. 7937-VCP, 2015 Del. Ch. LEXIS 191, at *60 (Del. Ch. July 22, 2015) (quoting *J.S. Alberici Constr. Co. v. Mid-W. Conveyor Co.*, 750 A.2d 518, 520 (Del. 2000)); *see also Ascension Ins. Holdings, LLC v. Underwoo*d, No. 9897-VCG, 2015 Del. Ch. LEXIS 19, at *5-6 (Del. Ch. Jan. 28, 2015) ("Delaware law respects the parties' right to freedom of contract, including with respect to reasonable covenants not to compete.").

---

[3]  It is unclear whether Silanna contends that California or Delaware law applies to the interference with contract claim.  *Compare* D.I. 8 at 9, *with id.* at 10.  (Silanna appears to suggest that Delaware law applies to the interference with prospective economic advantage claim.  *See id.* at 15.)  "In determining choice of law in tort actions, Delaware has adopted the 'most significant relationship test' of the Restatement (Second) of Conflicts §§ 6, 145, 146."  *New Zealand Kiwifruit Mktg. Bd. v. City of Wilmington*, 825 F. Supp. 1180, 1185 (D. Del. 1993) (citation omitted).  Because Philippine law on tortious interference is similar to California and Delaware law, *see* Timoteo B. Aquino, Torts and Damages 3 (2d ed. 2005) (excerpts attached as Ex. 7) (noting that the Philippine Supreme Court recognizes torts from various countries and borrows heavily from the decisions of foreign courts, especially those of Spain and the United States), and because resolution of Silanna's motion does not turn on which jurisdiction's *tort* law applies, the Court need not resolve the choice-of-law issue for the tort claims at this stage.

11

Here, the employment contracts at issue — which are attached to and incorporated in the Complaint — make clear that Power Integrations' contracts with its Philippine-based employees are governed by Philippine law. *See* D.I. 1, Ex. A at p. 9 ("This Agreement will be governed and construed in accordance with the laws of Republic of the Philippines."), Ex. B at p. 9 (same), Ex. C at p. 9 (same), Ex. D at p. 2 ("Philippine law shall apply to your employment."). With respect to global documents such as the Employee Agreement Regarding Confidentiality and Inventions, California law governs only to the extent that the transactions "tak[e] place ***wholly within California between California residents***." Otherwise, the laws of the region where the employee resides apply. *See, e.g.*, D.I. 1, Ex. A at p. 14, Ex. D at pp. 2, 6.

It is also indisputable that the Philippines has a substantial material relationship to the transactions. Silanna's characterization of Power Integrations' Philippine-based former employees as "California workers" is wrong and misleading. *See* D.I. 8 at 10-11. Even if it were true (which does not appear to be so), whether these former employees are currently working for Silanna in California is irrelevant, as the employment contracts at issue pertain to these former employees' employment with Power Integrations, not Silanna. These former employees, all citizens and residents of the Philippines, negotiated and signed the contracts in the Philippines and were employed under the contracts at Power Integrations' facilities based in the Philippines. D.I. 1 at ¶¶ 10, 18, 26, 34, 50, 51 & Exs. A-D; De Lara Decl. (attached as Ex. 1) at ¶¶ 2-4; Evangelista Decl. (attached as Ex. 2) at ¶¶ 2-4; Barrameda Decl. (attached as Ex. 3) at ¶ 2; Mariano Decl. (attached as Ex. 4) at ¶¶ 2, 3. As such, unlike the contracts at issue in *Ascension* or *NuVasive*, California would ***not*** have been the default jurisdiction absent the choice-of-law provision in Power Integrations' employment contracts with its Philippine-based employees. *See Ascension*, 2015 Del. Ch. LEXIS 19, at *6; *NuVasive, Inc. v. Miles*, No. 2017-0720-SG, 2019

Del. Ch. LEXIS 325, at *7-8 & n.22 (Del. Ch. Aug. 26, 2019) (citing *NuVasive, Inc. v. Miles*,

No. 2017-0720-SG, 2018 Del. Ch. LEXIS 329, at *12 (Del. Ch. Sept. 28, 2018)).

Moreover, even if California were the default jurisdiction absent a choice-of-law

provision, Delaware courts will not disregard the parties' right to freedom of contract unless

California has "a materially greater interest" in enforcement of the covenant — an analysis

completely ignored by Silanna. *See Ascension*, 2015 Del. Ch. LEXIS 19, at *8; *Nuvasive*, 2019

Del. Ch. LEXIS 325, at *7. In this case, California does not have "a materially greater interest"

in the contracts at issue than the Philippines. Although Power Integrations is headquartered in

California, as discussed above, the contracts at issue were negotiated, executed, and performed

primarily in the Philippines.

Silanna's reliance on *Application Grp., Inc. v. Hunter Grp., Inc.*, 61 Cal. App. 4th 881

(1998), is misplaced. *Application Group* was decided by a California court under California's

choice-of-law rule, not Delaware's, *see id.* at 899, and therefore is neither binding nor relevant.

Moreover, *Application Group* does not stand for the proposition that California law on restrictive

covenants always applies whenever a California-based employer is involved. To the contrary, as

the trial court noted, "***recruitment for employment <u>beyond the borders of California</u>***" by a

California-based employer "***are not brought under California law*** so as to apply California

employment restrictions of Business and Professions Code section 16600 simply because that

party has California connections." *Id.* at 890. In that case, the appellate court found that "the

trial court did not err in concluding that an employee of a California-based employer, who

performs services ***for California-based customers***, is '***employed in California***' and, thus,

'engage[d] in a business or profession' ***in California***, so as to enjoy the protection of section

16600." *Id.* at 905. Unlike the employee in *Application Group*, the former employees here were

not hired "for employment in California" by Silanna or its agent, Penbrothers. On information

and belief, while the former employees travelled to California for training at Silanna's headquarter, they are employed in the Philippines, and are therefore **not California employees**. In their carefully-worded declarations (three of which were signed in Manila, Philippines) submitted in the California action, the former employees did not claim to be **working in California**, but only working **for a company in California**.  *See* De Lara Decl. (Ex. 1) at ¶ 5; Evangelista Decl. (Ex. 2) at ¶ 4; Barrameda Decl. (Ex. 3) at ¶ 3; Mariano Decl. (Ex. 4) at ¶ 5.  As such, California law cannot override the parties' choice of law, even under *Application Group*. *See Application Grp.*, 61 Cal. App. 4th at 891 (an employer "is bound by California law only to the extent that its [employees] are free from the stricture against employment by a competitor in a business **to be performed in California**").  While California has a strong interest in "protecting the freedom of movement of persons whom California-based employers . . . wish to employ to **provide services in California**," that interest diminishes when the employment is "beyond the borders of California."  *Id.* at 895, 900-901.

For these reasons, the law of the Republic of the Philippines governs the employment contracts between Power Integrations and its Philippine-based former employees.  Silanna does not argue that the restrictive covenants at issue are void and unenforceable under Philippine law and should not be allowed to do so in their reply brief.[4]

---

[4]  Restrictive covenants are not prohibited under Philippine law if they are reasonably necessary to protect the legitimate business and property interests of an employer.  The Philippine Supreme Court has enumerated the following factors to be considered to determine the reasonableness of a restrictive covenant on a case-by-case basis: "(a) whether the covenant protects a legitimate business interest of the employer; (b) whether the covenant creates an undue burden on the employee; (c) whether the covenant is injurious to the public welfare; (d) whether the time and territorial limitations contained in the covenant are reasonable; and (e) whether the restraint is reasonable from the standpoint of public policy."  *Rivera v. Solidbank*, G.R. No. 163269 (Apr. 19, 2006) (attached as Ex. 6).

### 2. The limited restrictive covenants are valid and enforceable even under California law

Even if California law were to apply, the limited restrictive covenants at issue are valid and enforceable under California law.

#### a. *Non-compete*

In California, non-compete agreements are enforceable if they are necessary to protect an employer's trade secrets or confidential information. *See Muggill v. Reuben H. Donnelley Corp.*, 62 Cal. 2d 239, 242 (1965) (California Business and Professions Code section 16600 "invalidates provisions in employment contracts prohibiting an employee from working for a competitor after completion of his employment . . . *unless they are necessary to protect the employer's trade secrets*") (internal citations omitted). *Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 948 (2008), the seminal California case on non-compete agreements, did not change that. *See Wanke, Industrial, Commercial, Residential, Inc. v. Keck*, 209 Cal. App. 4th 1151, 1177 (2012) ("Thus, under *Edwards*, Business and Professions Code section 16600 generally prohibits the enforcement of a nonsolicitation agreement in all cases *in which the trade secret exception does not apply*."); *Asset Marketing Sys., Inc. v. Gagnon*, 542 F.3d 748, 758 (9th Cir. 2008) ("Under California law, non-competition agreements are unenforceable *unless necessary to protect an employer's trade secret*.") (citing section 16600 and *Edwards*, 44 Cal. 4th at 946); *Bank of Am., N.A. v. Lee*, Case No. CV 08-5546 CAS(JWJx), 2008 U.S. Dist. LEXIS 110410, at * 17 (C.D. Cal. Sept. 22, 2008) ("The Court concludes that 'trade secret exception' to § 16600 still applies. Nothing in *Edwards* is to the contrary.").

Here, the former employees were key engineers involved in the design and planning for Power Integrations' new and future products, which are the crown jewels of any high-tech company and are the lifeblood of Power Integrations. The non-compete provision at issue — which is limited to one-year after termination and only for employment or engagement with a

competitor of Power Integrations — is necessary to protect Power Integrations' valuable trade secrets and proprietary information and to ensure that they would not be misappropriated by a competitor.  As such, it is not barred by section 16600.  *See Asset Marketing*, 542 F.3d at 758.

Neither *Edwards* nor *SriCom, Inc. v. eBisLogic, Inc.*, No. 12-CV-00904-LHK, 2012 U.S. Dist. LEXIS 131082 (N.D. Cal. Sept. 13, 2012), says otherwise.  The *Edwards* court expressly declined to rule on whether there existed a "trade secret exception" to section 16600.  *See Edwards*, 44 Cal.4th at 946 n.4.  In *SriCom*, the issue of whether the "trade secret exception" remained post-*Edwards* was not raised by the parties and not addressed by the court.  *See SriCom*, 2012 U.S. Dist. LEXIS 131082 at *8-12, *14.  Where the issue was raised, California courts continued to hold, post-*Edwards*, that non-compete agreements are enforceable when they are necessary to protect an employer's trade secrets or confidential information.  *See Wanke*, 209 Cal. App. 4th at 1177; *Asset Marketing*, 542 F.3d at 758; *Bank of Am.*, 2008 U.S. Dist. LEXIS 110410, at * 17.

<h4 style="text-align:center">b.  *Non-Solicitation*</h4>

California law generally does not prohibit agreements not to solicit a company's *employees*.  *See Loral Corp. v. Moyes*, 174 Cal. App. 3d 268, 278-279 (1985) (agreement restraining former employee from "disrupting, damaging, impairing or interfering with his former employer's business by 'raiding' its employees" did not violate section 16600).  This is so even post-*Edwards*, in which the California Supreme Court held that the non-solicitation provision prohibiting employees from soliciting firm *clients* was invalid under section 16600 because it restricted the former employee from performing work for the firm's Los Angeles clients and "therefore restricted his ability to practice his accounting profession."  *Edwards*, 44 Cal. 4th at 948.  *See Sonic Auto., Inc. v. Mohammed Younis*, No. 15-CV-00717 RGK (AGRx), 2015 U.S. Dist. LEXIS 190427, at *4 (C.D. Cal. May 6, 2015) ("a contract may prohibit

employees, upon termination of their employment, from soliciting other employees to join them at their new employment"); *Arthur J. Gallagher & Co. v. Lang*, No. C 14-0909 CW, 2014 U.S. Dist. LEXIS 71286, at *13 (N.D. Cal. May 23, 2014) (holding that while non-compete and non-solicitation of ***customer*** provisions were void under section 16600, "provision of the agreement prohibiting Lang from recruiting Gallagher's ***employees*** is not void"); *Dominion Enters. v. LinkUSystems, Inc.*, Case No. SACV 11-1852 DOC (ANx), 2012 U.S. Dist. LEXIS 195813, at *18 (C.D. Cal. Feb. 16, 2012) (agreement not to solicit any of company's employees enforceable under California law); *Thomas Weisel Partners LLC v. BNP Paribas*, No. C 07-6198 MHP, 2010 U.S. Dist. LEXIS 11626, at *17 (N.D. Cal. Feb 10, 2010) ("An employer has a strong and legitimate interest in keeping current employees from raiding the employer's other employees for the benefit of an outside entity.")  Thus, the non-solicitation provision in Power Integrations' employment contracts, which is limited in duration and designed to protect Power Integrations' trade secrets and other proprietary information and to maintain a stable workforce, is valid and enforceable under California law.

Silanna's casual reference to *AMN Healthcare, Inc. v. Aya Healthcare Services, Inc.*, 28 Cal. App. 5th 923 (2018), is misleading.  In *AMN*, the court invalidated a "broadly worded" provision preventing former ***recruiter employees*** from soliciting "any employees," ***including travel nurses***, of the employer — a travel nurse staffing agency — not because section 16600 bars all "employee non-solicitation provisions" as Silanna suggests, but because the provision at issue "clearly restrained" travel-nurse recruiters from recruiting travel nurses.  *AMN Healthcare*, 28 Cal. App. 5th at 936; *see also id.* at 927 ("Significant in the instant case, a travel nurse was deemed to be an employee of AMN while on temporary assignment through AMN.").  Thus, *AMN* did not make new law but simply followed the precedent in determining the enforceability

of a non-solicitation provision based on whether the provision will restrain the employees from practicing their chosen profession.

Unlike the recruiters in *AMN*, Power Integrations' engineering employees are not in the profession of soliciting or recruiting other individuals.  The non-solicitation clause in Power Integrations' employment agreements does not in any way restrict the former employees' ability to practice "their chosen profession."  As such, it is not barred by section 16600.  *See Loral*, 174 Cal. App. 3d at 278-279; *Sonic Auto.*, 2015 U.S. Dist. LEXIS 190427, at \*4; *Lang*, 2014 U.S. Dist. LEXIS 71286, at \*13; *Dominion*, 2012 U.S. Dist. LEXIS 195813, at \*18; *Thomas Weisel*, 2010 U.S. Dist. LEXIS 11626, at \*17.[5]

### 3.    Power Integrations has alleged actual breach of the confidentiality provisions

Silanna does not deny that the Complaint alleges confidentiality agreements between Power Integrations and its former employees but argues that Power Integrations has failed to allege an actual "breach" of these agreements.  *See* D.I. 8 at 13.  Silanna is plainly wrong.[6]  The

---

[5]  Silanna cites *Barker* and *WeRide*.  *See* D.I. 8 at 13.  To the extent these two cases stand for the proposition that ***all*** non-solicitation agreements are invalid post-*Edwards* as Silanna argues, they are against the weight of authority and inconsistent with the majority of the courts on the issue. In *Barker*, also a case involving a staffing agency (Insight Global, LLC, *see* https://www.greatplacetowork.com/certified-company/1288262), the court, following *AMN*, merely granted the former employee plaintiff's motion for reconsideration and allowed him to amend the complaint to add claims with respect to the non-solicitation provision).  *See Barker v. Insight Global, LLC*, No. 16-cv-07186-BLF, 2019 U.S. Dist. LEXIS 6523, at \*10 (N.D. Cal. Jan. 11, 2019).  In *WeRide*, the court followed the holding of *Barker*, but gave no explanation as to how a limited non-solicitation provision would retrain a non-recruiter employee from engaging in his or her profession, trade, or business.  *See Weride Corp. v. Huang*, 379 F. Supp. 3d 834, 852 (N.D. Cal. 2019).

[6]  Silanna's argument that Power Integrations' claim is based solely on an "inevitable disclosure" theory is a red herring.  While Power Integrations has alleged threatened unauthorized disclosure of Power Integrations' trade secrets by the former employees and threatened misappropriation by Silanna, which is actionable in this Circuit, *see Fres-co*, 690 F. App'x at 76, Power Integrations' interference with contractual relations claim is not based on these allegations.

Complaint alleges that Hodge breached the confidentiality agreement by disclosing trade secret and other confidential and proprietary information about Power Integrations' new and future products to Silanna. D.I. 1 at ¶¶ 43, 59. In addition, the Complaint alleges that Hodge, De Lara, Evangelista, Barrameda, and Mariano breached their respective confidentiality agreements by disclosing to Silanna and Penbrothers confidential human resource information relating to Power Integrations' Philippine operations. *Id.* at ¶¶ 12, 17, 25, 33, 39, 48-50.

### 4. Power Integrations has identified the contracts Silanna interfered with

Equally disingenuous is Silanna's assertion that Power Integrations has failed to identify what contracts Silanna interfered with. *See* D.I. 8 at 14. The Complaint specifically identifies, attaches, and incorporates by reference Power Integrations' contracts with De Lara, Evangelista, Barrameda, Mariano, and Hodge — the same contracts Silanna complains about just a few pages ago. D.I. 1 at ¶¶ 11; 19, 27, 35, 42; D.I. 1, Exs. A-D; D.I. 8 at 9-14.

Power Integrations has stated an interference claim at least based on the contracts of these identified individuals. As such, Silanna's motion to dismiss this claim must be denied.

### D. Power Integrations Has Sufficiently Pled Its Interference with Prospective Economic Advantage Claim

Under Philippine law, one who induces another not to enter into a contract may be liable for intentional tortious interference with prospective advantage under the general provisions of law. *See Aquino*, TORTS AND DAMAGES at 822. In California, interference with an at-will employment relationship "may be actionable under the standard applicable to claims for intentional interference with prospective economic advantage" where the defendant engaged in an independently wrongful act. *Reeves v. Hanlon*, 33 Cal. 4th 1140, 1144 (2004).[7]

---

[7] Silanna appears to suggest that Delaware law applies to the interference with prospective economic advantage claim. *See* D.I. 8 at 15. As discussed above, the Court need not decide the choice-of-law issue for the tort claims at this stage.

Here, the Complaint alleges that Silanna knowingly and intentionally interfered with Power Integrations' at-will employment relations with its then-employees, including De Lara, Evangelista, and Barrameda, by conspiring with Penbrothers and Power Integrations' former employees and improperly using Power Integrations' confidential human resource information to target and raid by stealth Power Integrations' applications engineers based in the Philippines, resulting in these individuals' termination of their employment agreements, and causing harm to Power Integrations. Power Integrations has sufficiently pled each element. *See* D.I. 1 at ¶¶ 10-39, 45-50, 60, 61, 78-84. Silanna's contention that Power Integrations has failed to allege that Silanna "sought maliciously or in bad faith to injure" Power Integrations simply ignores these detailed allegations.

Silanna also argues that Power Integrations' interference with prospective economic advantage claim "is predicated on Defendant's alleged interference with the unlawful non-compete and non-solicit provisions[.]" D.I. 8 at 15. Silanna is wrong. Not only are the limited restrictive covenants at issue lawful (as discussed earlier), Power Integrations' claim of interference with prospective economic advantage is based not on the induced breach of these restrictive covenants, but on the induced termination of at-will employment relation. *See Reeves*, 33 Cal. 4th at 1144. Accordingly, Silanna's motion to dismiss this claim must be denied.

## V.    CONCLUSION

For the foregoing reasons, Power Integrations respectfully requests that the Court deny Silanna's Motion to Dismiss in its entirety. To the extent the Court finds Power Integrations' Complaint lacking any factual allegation necessary to state a claim, Power Integrations respectfully moves the Court for leave to amend its Complaint, which should be freely given at this early stage of the proceeding. *See* Fed. R. Civ. P. 15(a); *Foman v. Davis*, 371 U.S. 178, 182 (1962).

/s/ David M. Fry
John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
David M. Fry (No. 5486)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
OF COUNSEL:                              jshaw@shawkeller.com
David J. Miclean                         kkeller@shawkeller.com
Limin Zheng                              dfry@shawkeller.com
MICLEAN GLEASON LLP                      *Attorneys for Plaintiff*
411 Borel Avenue, Suite 310
San Mateo, CA  94402
(650) 684-1181

Dated: September 17, 2019

21