**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| POWER INTEGRATIONS, INC., Plaintiff, | : | |
| v. | : | C.A. No. 19-1292-LPS |
| SILANNA SEMICONDUCTOR NORTH AMERICA, INC., Defendant. | : | |

John W. Shaw, Karen E. Keller, and David M. Fry, SHAW KELLER LLP, Wilmington, DE

David J. Miclean and Limin Zheng, MICLEAN GLEASON LLP, San Mateo, CA

Attorneys for Plaintiff

Philip A. Rovner and Jonathan A. Choa, POTTER ANDERSON & CORROON LLP, Wilmington, DE

Micha Danzig and Paul M. Huston, MINTZ LEVIN COHN FERRIS GLOVSKY & POPEO, P.C., San Diego, CA

Attorneys for Defendant

**MEMORANDUM OPINION**

June 29, 2020
Wilmington, Delaware



**STARK, U.S. District Judge:**

## I. INTRODUCTION

Plaintiff Power Integrations, Inc. ("Plaintiff" or "Power Integrations") filed this action on July 11, 2019, alleging (i) trade secret misappropriation under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, *et seq.*; (ii) interference with contractual relations; and (iii) interference with prospective economic advantage. (D.I. 1) Defendant Silanna Semiconductor North America, Inc. ("Defendant" or "Silanna") filed a motion to dismiss all three causes of action on September 3, 2019. (D.I. 7) The Court heard argument on the pending motion to dismiss on December 6, 2019. (D.I. 17) ("Tr.")

For the reasons stated below, the Court will grant Defendant's motion to dismiss as to Count I and deny it as to Counts II and III.

## II. BACKGROUND

This case concerns the separation of Plaintiff's former employees – Edison D. De Lara ("De Lara"), Charles Reyes Evangelista ("Evangelista"), Stuart Hodge Jr. ("Hodge"), Ian B. Barrameda ("Barrameda"), and Alex F. Mariano ("Mariano") (collectively, the "Silanna Employees") – from Plaintiff and their subsequent employment with Defendant, a competitor of Plaintiff. Plaintiff alleges that the Silanna Employees were employed by Plaintiff as engineers, and each signed an employment agreement, which, in relevant part, was intended to maintain confidentiality of sensitive information, including trade secrets, during and after their employment with Plaintiff. (D.I. 1 ¶ 57) The agreements contained various non-disclosure, non-compete, and non-solicitation provisions.[1] (D.I. 1 ¶ 56) Plaintiff alleges that Defendant, working alone and/or with a

[1] The Court will refer to the employment agreements of each of the Silanna Employees individually as the "De Lara Contract," the "Evangelista Contract," the "Hodge Contract," the "Barrameda Contract," and the "Mariano Contract." The agreements are attached to the complaint

Philippines-based recruiting firm called Penbrothers International Inc. ("Penbrothers"), targeted, recruited, and hired Plaintiff's current and recently-separated engineering employees who had highly sensitive knowledge and information, including trade secrets, relating to Plaintiff's business. (D.I. 1 ¶¶ 15-16, 23-24, 32, 38, 46-51)

## III. LEGAL STANDARDS

Evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires the Court to accept as true all material allegations of the complaint. *See Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks omitted). Thus, the Court may grant such a motion to dismiss only if, after "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (internal quotation marks omitted).

However, "[t]o survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). At bottom, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery

---

as Exhibits A-E.

will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted).

The Court is not obligated to accept as true "bald assertions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (internal quotation marks omitted), "unsupported conclusions and unwarranted inferences," *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997), or allegations that are "self-evidently false," *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996).

## IV. DISCUSSION

### A. Plaintiff Has Failed To Sufficiently Allege A Violation Of The DTSA

Defendant argues that Plaintiff's claim for misappropriation of trade secrets under the DTSA is deficient for two independent reasons: (i) the complaint fails to identify what the alleged "trade secrets" are; and (ii) the complaint fails to identify what improper use Defendant is alleged to have made of those trade secrets. (D.I. 8 at 3)

To state a claim under the DTSA, "a plaintiff must identify a trade secret with sufficient particularity so as to provide notice to a defendant of what he is accused of misappropriating and for a court to determine whether misappropriation has or is threatened to occur." *Flexible Techs., Inc. v. SharkNinja Operating LLC*, 2019 WL 1417465, at *2 (D. Del. Mar. 29, 2019).

Under the statute, a trade secret is defined as information that (i) "the owner thereof has taken reasonable measures to keep . . . secret" and (ii) "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of [such] information." 18 U.S.C. § 1839(3). "Misappropriation" is the "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by

improper means," or the "disclosure or use" of the trade secret by "improper means," including "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." 18 U.S.C. § 1839(5), (6).

Both parties cite *Eastman Chemical Co. v. AlphaPet Inc.*, 2011 WL 5402767, at *5 (D. Del. Nov. 4, 2011), a case in which this Court found that the defendants had been given "sufficient factual information to provide adequate notice of the plausible grounds for Plaintiff's misappropriation claim under the *Twombly*/*Iqbal* standard." The *Eastman* complaint specifically and repeatedly referenced the plaintiff's "IntegRex™ PET technology." *Id.* While noting that the plaintiff "use[d] the phrase '***including*** information related to Eastman's IntegRex™ PET technology,' . . . which suggest[ed] that there could be some other unidentified trade secrets also at play in [the] litigation," the Court ultimately found that "in light of the repeated references to IntegRex™ PET technology . . . , it [was] clear that [the plaintiff had] identified the illicit disclosure and use of information relating to that particular type of melt-to-resin technology as the gravamen of its trade secret misappropriation claim." *Id.*; *see also Spear Pharm., Inc. v. William Blair & Co., LLC*, 610 F.Supp.2d 278, 284 (D. Del. 2009) (holding that information relating to generic Efudex® product was the sort of "core information" that should be found in a claim for trade secret misappropriation).

By contrast, in *Medafor, Inc. v. Starch Medical Inc.*, 2009 WL 2163580, at *1 (D. Minn. July 16, 2009), a case cited by Defendant here and distinguished in the *Eastman* opinion, the Court dismissed claims where the plaintiff "failed to plead any facts to support its allegation that [the defendant] stole its trade secrets." There, "[t]he complaint describe[d] the trade secrets at issue as 'business methodologies, formulas, devices, and compilations of information, including suppliers and customers,' . . . provid[ing] almost no guidance as to the nature of the alleged trade secret,

leaving the defendant to guess at which of the legions of its unidentified 'methodologies, formulas, devices, and compilations of information' was alleged to have been wrongfully misappropriated." *Eastman*, 2011 WL 5402767, at *6 (describing and quoting from *Medafor*, 2009 WL 2163580, at *1).

Here, Plaintiff has failed to sufficiently identify any trade secret that was allegedly misappropriated. Thus, Plaintiff has failed to satisfy the requirements of Federal Rule of Civil Procedure 8, requiring "a short and plain statement of the claim showing that the pleader is entitled to relief." *See also Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) ("Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'") (quoting *Twombly*, 550 U.S. at 555).

Unlike in *Eastman*, Plaintiff's description of the trade secrets at issue fails to identify "the gravamen of its trade secret misappropriation claim." 2011 WL 5402767, at *5. Instead, the complaint recites broad categories of information, defined as "Power Integrations Future Product Trade Secrets," "including but not limited to product specifications, product forecasts, definitions, designs, research and development, patentable technologies, particularized costing information, bill of materials, customer acquisition, business opportunities and strategies, marketing and sales projections, and business plans relating to Power Integrations' new and future products." (D.I. 1 ¶ 10) Plaintiff's statement that the gravamen of its claim is "clear[ly]" "Power Integrations' future product plans and designs relating to power conversion technology" (D.I. 9 at 9) (emphasis omitted) is belied by the breadth of its definition of "Power Integrations Future Product Trade Secrets" in the complaint. That open-ended and seemingly boundless definition does not provide fair notice of the scope of Plaintiff's trade secret misappropriation claim.

Plaintiff's failure to identify the trade secret(s) at issue is a dispositive failing in its pleading. Thus, the Court need not address Defendant's additional argument that the complaint fails to allege misappropriation. Accordingly, the Court will grant Defendant's motion to dismiss Count I of the complaint.[2]

**B. Plaintiff Has Stated A Claim For Interference With Contractual Relations**

Defendant moves to dismiss Plaintiff's claim for interference with contractual relations because, Defendant argues, no alleged contractual agreement is enforceable and, thus, there is no basis for Plaintiff's claim. (D.I. 8 at 9)

The parties disagree about which law applies to this tort claim, but they agree that a necessary element of the claim is the existence of a valid contract. (D.I. 8 at 9-10; D.I. 9 at 10-11, 15-18) Defendants' motion turns on the issue of whether any of the Silanna Employees had a valid contract with Plaintiff. Therefore, the Court need not decide at this stage of the case which law governs the tortious interference claim. *See generally In re Combustion Eng'g, Inc.*, 366 F. Supp. 2d 224, 230 n.4 (D. Del. 2005) (finding it unnecessary to resolve choice-of-law issue that did not affect outcome).

The parties also disagree about which law governs the employment contracts at issue here. Defendant applies California law, while Plaintiff applies Philippine law. (D.I. 8 at 10-14; D.I. 9 at

[2] The Court will provide Plaintiff an opportunity to amend the DTSA claim. The Court is not yet persuaded that amendment would be futile. *See generally* Fed. R. Civ. Proc. 15(a)(2) (leave to amend to be "freely give[n] . . . when justice so requires"); *see also Forman v. Davis*, 371 U.S. 178, 182 (1962) ("In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be 'freely given.'"); *Dole v. Arco Chem. Co.*, 921 F.2d 484, 486-87 (3d Cir. 1990) (discussing Third Circuit's liberal approach to amendment of pleadings and preference for deciding claims on merits rather than on technicalities). Defendant does not oppose granting leave to amend. (*See* Tr. at 6)

10-14) This dispute must be resolved in order to decide Defendant's motion.[3]

When federal jurisdiction is based on diversity of citizenship, the Court must apply the forum state's choice-of-law rules. *See Kaneff v. Del. Title Loans, Inc.*, 587 F.3d 616, 621 (3d Cir. 2009). Because this Court sits in Delaware, it must apply Delaware's choice-of-law rules.

Delaware follows the Restatement (Second) of Conflict of Laws (the "Restatement"), which generally respects parties' right to freedom of contract and enforces choice-of-law provisions. *See, e.g.*, *Ascension Ins. Holdings, LLC v. Underwood*, 2015 WL 356002, at *2 (Del. Ch. Jan. 28, 2015). The Restatement articulates an exception to bar parties from contracting around state policies. When a contract, absent a choice-of-law provision, would be governed by the law of a state that has a public policy that would limit or bar a choice-of-law provision, that state's public policy cannot be circumvented by including such a provision in the contract. *See id.* ("[A]llowing parties to circumvent state policy-based contractual prohibitions through the promiscuous use of such provisions would eliminate the right of the default state to have control over enforceability of contracts concerning its citizens.").

Accordingly, under § 187 of the Restatement, Delaware will enforce parties' choice-of-law provision unless:

> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
>
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

[3] The Court's choice-of-law analysis at this early stage of the litigation is based on the facts plausibly pleaded in the complaint.

Restatement § 187(2) (1971).

Absent a choice-of-law provision in a contract, Delaware courts apply the "most significant relationship" test to determine which state law should govern the interpretation of the contract. Restatement § 188(1) (1971). The Restatement provides:

> (1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.
>
> (2) In the absence of an effective choice of law by the parties . . . the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
>
> (a) the place of contracting,
>
> (b) the place of negotiation of the contract,
>
> (c) the place of performance,
>
> (d) the location of the subject matter of the contract, and
>
> (e) the domicile, residence, nationality, place of incorporation and place of business of the parties.
>
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.
>
> (3) If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied, except as otherwise provided in §§ 189-199 and 203.

Restatement § 188(1)-(3) (1971).[4]

[4] The principles stated in Restatement § 6 are: "(a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectation, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied."

The Court now turns to applying these provisions to the specific employment contracts at issue between Plaintiff and each of the former employees.

The De Lara and Barrameda Contracts each include a Philippine choice-of-law provision. (D.I. 1 Ex. A at 9, Ex. C at 9) Each of these contracts also includes a California choice-of-law provision covering "transactions taking place wholly within California between California residents." (*E.g.*, D.I. 1 Ex. A ¶ 13) Because the contracts are between Plaintiff (in California) and then-Philippine residents regarding employment at Plaintiff's Philippine facilities, and they appear to have been negotiated and executed in the Philippines (*see*, *e.g.*, D.I. 1 ¶¶ 10, 26, 50, 51 & Exs. A, C), it is the Philippines that has the most significant relationship to the contracts. Thus, Philippine law would govern the De Lara and Barrameda Contracts absent any choice-of-law provision. As the parties have not argued that any Philippine policy would limit or bar choice-of-law provisions, the Court will enforce both choice-of-law provisions (i.e., the Philippine and California provisions) in these contracts unless "(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties." Restatement § 187(2) (1971).

The analysis is essentially identical for the Evangelista Contract. Like the De Lara and Barrameda Contracts, the Evangelista Contract includes a Philippine choice-of-law provision. (D.I. 1 Ex. B at 9) It does not, however, include the additional California choice-of-law carve-out. (*Id.*)[5] Because the Evangelista Contract is between Plaintiff and a then-Philippine resident

---

[5] In other litigation pending in California, *see Power Integrations, Inc., v. Edison D. De*

regarding employment at Plaintiff's Philippine facilities, and it appears to have been negotiated and executed in the Philippines (*see, e.g.*, D.I. 1 ¶ 18 & Ex. B), Philippine law would govern the contract even absent any choice-of-law provision. The Court will apply Philippine law unless either of the two exceptions of § 187(2) applies.

The Mariano Contract, which predates all of the other contracts, does not include a Philippine choice-of-law provision. Instead, it states (as do the De Lara, Barrameda, and Evangelista Contracts) that "[t]he Employee Handbook is a global document and where Philippine law differs from the terms set out in the Employee Handbook, Philippine law shall apply to your employment." (D.I. 1 Ex. D at 2; *see also id.* Exs. A, B, C) The Mariano Contract contains the same California carve-out as appears in the other contracts. (*See* D.I. 1 Ex. D at ¶ 13) The Mariano Contract is between Plaintiff and a then-Philippine resident regarding employment at Plaintiff's Philippine facilities, and it appears to have been negotiated and executed in the Philippines. (*See, e.g.*, D.I. 1 ¶ 34 & Ex. D) Thus, the Philippines has the most significant relationship to the Mariano Contract, and Philippine law would govern absent a choice-of-law provision. The Court will apply Philippine law unless either of the two exceptions of § 187(2) applies.[6]

---

*Lara, et al.*, 3:20-cv-00410-MMA-MSB (S.D. Cal.), the Southern District of California ("S.D. Cal.") noted that "all Individual Defendants," including Evangelista, "executed" the California choice-of-law carve-out. (*See* D.I. 18 Ex. A at 12 n.5) The record does not reflect a similar acknowledgement by Silanna here. Nonetheless, the parties here have not distinguished the Evangelista Contract based on any contention that it lacks the California carve-out.

[6] Based on the complaint, the parties' briefing, and the statements made at oral argument, the Court understands Plaintiff's tortious interference claims to be directed toward the employment relationships between Plaintiff and De Lara, Barrameda, Evangelista, and Mariano; not between Plaintiff and Hodge. (*See, e.g.*, D.I. 1 ¶¶ 48, 50, 60, 61; D.I. 9 at 12 (Plaintiff stating employment contracts at issue, which concern citizens and residents of Philippines and employment in Philippines, are attached to and incorporated in complaint, citing only De Lara, Evangelista, Barrameda, and Mariano Contracts); Tr. at 14 (Plaintiff explaining that after Hodge left Plaintiff

Having made these determinations, the Court now turns to whether either of the two exceptions of § 187(2) applies.

The first exception, under § 187(2)(a), does not apply. This is because the Philippines has a substantial relationship to the parties and the transaction, and there is a reasonable basis for the parties' Philippine choice-of-law provision. Plaintiff's complaint alleges that the contracts were negotiated, signed, and entered into in the Philippines by then-residents of the Philippines, concerning employment at facilities based in the Philippines; it further alleges that the employees reside in the Philippines. The California carve-out of the employment contracts is not triggered under these allegations because that provision only applies to a "transaction[]" that occurs "wholly within California between California residents." That is not what is alleged here. Further, accepting all well-pled factual allegations in the complaint as true, Plaintiff plausibly alleges that Defendant began interfering with the relevant employment contracts through Penbrothers in the Philippines, again rendering the transaction one which did not occur "wholly within California." (*See also* D.I. 18 Ex. A at 13) (California court concluding same) For at least these reasons, the Philippines has a substantial relationship to the parties and the transaction and there was a reasonable basis for the parties' Philippine choice-of-law provision. Therefore, again, the exception of Restatement § 187(2)(a) is not applicable.

The only remaining basis on which Defendant could prevail in its contention that the Court should not apply Philippine law is Restatement § 187(2)(b). In evaluating the applicability of this exception, the Court must determine whether application of Philippine law "would be contrary to a

---

and joined Defendant, "that's when they start to . . . recruit a specific design team that is in the Philippines that deals with Power Integrations' new and future products"); *id.* at 19 (similar); *see also* D.I. 1 Ex. E (Hodge Contract, appearing to show that Hodge was located in Florida and hired by Plaintiff for work in Illinois)) The Court, therefore, does not analyze the Hodge Contract to determine the appropriate governing law.

fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties." Restatement § 187(2)(b) (1971). Applying § 188, the Court concludes that the Philippines has the most significant relationship to the parties and the employment contracts, as it is the place of contracting, negotiation of the contract, and performance, and is the location of the Silanna Employees' employment (i.e., the subject matter of the contracts), while California is only the place of business of Plaintiff. Philippine law would apply even in the absence of the choice-of-law provision. Therefore, the Court need not assess whether the application of Philippine law would be contrary to a fundamental policy of California or whether California has a materially greater interest than the Philippines in the determination of this issue, as California is not the state that "would be the state of the applicable law in the absence of an effective choice of law by the parties." Restatement § 187(2)(b) (1971). Accordingly, the exception of Restatement § 187(2)(b) does not apply.[7]

[7] The Court recognizes that Judge Anello of S.D. Cal. reached a different conclusion. Judge Anello found a conflict between California and Philippine law and determined that California had a "materially greater interest," since its interests would be more impaired if Philippine law were applied. (D.I. 18 Ex. A at 13-17) ("Despite the Philippines having a substantial relationship to Defendants and there being a reasonable basis for using Philippine law, the Court finds that California has a materially greater interest than the Philippines in determining the enforceability of the restrictive covenants at issue, and California's interests would be more seriously impaired if subordinated to Philippine law.") Respectfully, this Court concludes that because Philippine law would apply under § 188 even absent the choice-of-law provision, under § 187(2) Philippine law should apply even if it is contrary to a fundamental policy of California. In other words, the comparison under § 187(2) is between the law of the chosen state (here, the Philippines) and the fundamental policy of the law of the state that would govern the contract absent any choice-of-law provision (here, also the Philippines); on the facts of the present case, no comparison need be made to the fundamental policy of California. *See generally Nedlloyd Lines B.V. v. Super. Ct.*, 834 P.2d 1148, 1152 n.5 (Cal. 1992) (indicating that analysis of whether chosen state's law is against fundamental policy of California is necessary where, absent choice-of-law provision, California law would govern); *see also Application Group, Inc. v. Hunter Group, Inc.*, 61 Cal. App. 4th 881, 899 n.12 (Cal. Ct. App. 1998) (determination that chosen state and state that would govern absent an effective choice-of-law provision are one and the same "obviates any need to weigh the forum's

Thus, Philippine law governs the contracts at issue here, as only the Philippine choice-of-law provision remains applicable to the claims at issue, and, as previously discussed, Philippine law would govern the contracts anyway, even absent a choice-of-law provision. Defendant's contention that the employment contracts are invalid and unenforceable based on the face of the complaint (and the materials integral to it) fails because it is predicated on the applicability of California law. All of Defendant's arguments that rely on the applicability of California law lack merit.[8]

---

public policy interests against the chosen state's interests or to determine which state has the 'materially greater interest' in having its law applied"). Moreover, the Court agrees with Plaintiff that "[a]lthough Power Integrations is headquartered in California, . . . the contracts at issue were negotiated, executed, and performed primarily in the Philippines," so "California does not have 'a materially greater interest' in the contracts at issue than the Philippines." (D.I. 9 at 13)

[8] Defendant relies heavily on *NuVasive, Inc. v. Miles*, 2019 WL 4010814 (Del. Ch. Aug. 26, 2019), to support its argument that California law should apply because California has a strong interest in overseeing and regulating employment relationships within it. (D.I. 11 at 5) Defendant argues that in *NuVasive*, the Delaware Court of Chancery held that non-compete and non-solicit provisions were invalid and unenforceable because they violated fundamental California public policy. (D.I. 11 at 5; *see also NuVasive*, 2019 WL 4010814, at *7) But *NuVasive* is distinguishable from the present case, as there the jurisdiction whose law would have applied absent an effective choice-of-law provision was California. *See NuVasive*, 2019 WL 4010814, at *3 (explaining that Restatement, as applied in Delaware, requires that "[i]f (1) California law would apply absent the Delaware choice of law provision, and if (2) enforcement of the non-solicitation covenant would conflict with California fundamental policy, and if (3) California has a materially greater interest in enforcement of the covenant than does Delaware, California law would apply to the Agreement . . . , despite the Delaware choice of law provision"). Here, by contrast, the jurisdiction whose law would apply absent an effective choice-of-law provision is the Philippines, which is the same as the parties' chosen law. Thus, the present set of facts was not before the *NuVasive* court.

For the same reason, *Ascension*, 2015 WL 356002, also fails to compel a different result than the one the Court reaches here. In *Ascension*, the Delaware Chancery Court found that California's interest in preventing enforcement of non-compete provisions was greater that Delaware's interest in vindicating freedom of contract. (*See id.* at *5) But the default jurisdiction absent the parties' choice-of-law provision was California. (*See id.* at *3) ("[T]here is no question that, absent the contractual agreement of the parties to import Delaware law, California law would apply here.") (citing Restatement § 188(2) (1971)) Likewise, in *Application Group, Inc. v. Hunter Group, Inc.*, 61 Cal. App. 4th 881 (Cal. Ct. App. 1998), the California court was not presented with whether the law of a third jurisdiction would apply where that third jurisdiction's law would govern

So, too, for Defendant's remaining arguments for dismissal of Plaintiff's contractual relations claim. Defendant contends that the claim fails to allege actual breach of the confidentiality provisions. (D.I. 8 at 13-14) But the complaint alleges that Hodge breached his confidentiality agreement by disclosing confidential proprietary information, and that De Lara, Evangelista, Barrameda, and Mariano breached their confidentiality agreements by disclosing confidential human resource information. (D.I. 1 ¶¶ 12, 17, 25, 33, 39, 43, 48-50, 59)[9] Defendant further contends that the claim fails to identify which contracts with which Defendant interfered. (D.I. 8 at 14) But the complaint incorporates and attaches the relevant contracts and states a claim relating to these identified contracts. (*See* D.I. 1 Exs.)

Thus, Defendant's motion to dismiss Count II of the complaint will be denied.

### C. Plaintiff Has Stated A Claim For Interference With Prospective Economic Advantage

Finally, Defendant seeks to dismiss Count III, alleging interference with prospective economic advantage. As the bases for dismissal, Defendant argues that Plaintiff fails to allege (i) with which "current and recently separated employees'" relationships Defendant interfered; (ii) what prospective economic relationships have been harmed by the alleged interference; and (iii) that Defendant acted maliciously or in bad faith (arguments grounded in Defendant's application of New Jersey law). (D.I. 8 at 15-16) Plaintiff responds that its claim is premised on the allegations that Defendant knowingly and intentionally interfered with Plaintiff's at-will employment relationships with its then-employees by conspiring with Penbrothers and Plaintiff's

---

the contracts at issue absent an effective choice-of-law provision.

[9] While here, too, the California court reached a different conclusion – finding the allegations of breach of confidentiality provisions vague and conclusory (*see* D.I. 18 Ex. A at 27-32) – this Court finds them adequately pled (although barely so).

former employees and improperly using Plaintiff's confidential human resource information to target Plaintiff's Philippines-based applications engineers, which resulted in these individuals' termination of their employment agreements, causing harm to Plaintiff. (D.I. 9 at 20; *see also, e.g.*, D.I. 1 ¶¶ 10-39, 45-50, 60-61, 78-84) The Court will not dismiss this count.[10]

The parties again disagree on which law applies. Defendant appears to believe that Delaware law applies, as it cites a Delaware case and two Third Circuit cases (D.I. 8 at 14-16) – although both Third Circuit cases apply New Jersey law.[11] The Court assumes that Defendant erred in relying on and applying New Jersey law in its brief, as neither party has argued that New Jersey law applies, and there is no factual basis to do so. Defendant's view of the applicable law is somewhat unclear also because Defendant explicitly states in its reply brief that California law applies to this claim. (D.I. 11 at 10) Although Plaintiff does not expressly contend that Delaware law is inapplicable,[12] its brief cites to Philippine and California law. (D.I. 9 at 19-20)

Because the requirements for this tort claim differ under Delaware and California law, a choice-of-law analysis is necessary. Plaintiff fails to allege where the alleged interference occurred. Plaintiff does allege that Defendant has a regular and established place of business in

---

[10] The Court respectfully disagrees with the California court, which dismissed this count. (*See* D.I. 18 Ex. A at 40-43).

[11] *See Inter Med. Supplies, Ltd. v. EBI Med. Sys., Inc.*, 181 F.3d 446 (3d Cir. 1999); *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737 (3d Cir. 1996). The Court also notes that the language Defendant quotes from the case in the Delaware Court of Chancery is from the discussion relating to the tortious interference with contract claim – not the tortious interference with prospective economic advantage claim. *eCOMMERCE Indus., Inc. v. MWA Intelligence, Inc.*, 2013 WL 5621678, at *38 (Del. Ch. Sept. 30, 2013); *see also De Bonaventura v. Nationwide Mut. Ins. Co.*, 419 A.2d 942, 947 (Del. Super. 1980) ("The elements of [tortious interference with contract and tortious interference with prospective economic advantage] are similar but not identical.").

[12] Instead, Plaintiff argues only that "the Court need not decide the choice-of-law issue for the tort claims at this stage." (D.I. 9 at 19 n.7)

California as well as an agreement with Penbrothers to target, recruit, and hire Plaintiff's employees and then assign them to work with Defendant in California. (*See, e.g.*, D.I. 1 ¶¶ 2, 9) Plaintiff fails to allege whether the alleged interference occurred in California or in the Philippines, and the parties do not present arguments on that issue. Either reading of the complaint is plausible.

Because the Court does not have enough information to make any determination of which law applies, the Court will analyze the sufficiency of Plaintiff's allegations under both Delaware and California law. Plaintiff has adequately stated a claim under both Delaware and California law.[13]

To state a claim for tortious interference with prospective economic advantage under Delaware law, a plaintiff must allege: "(a) the reasonable probability of a business opportunity, (b) intentional interference with that opportunity, (c) proximate causation, and (d) damages." *KT4 Partners LLC v. Palantir Techs., Inc.*, 2018 WL 4033767, *6 (Del. Super. Ct. Aug. 22, 2018). In addition, a plaintiff must allege that the Defendant's conduct was wrongful. *See id.* In determining whether conduct was wrongful, Delaware courts consider the factors in the Restatement (Second) of Torts:

> (a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference and (g) the relations between the parties.

Restatement (Second) of Torts § 767 (1979); *see also KT4 Partners*, 2018 WL 4033767, at *6.

[13] While the parties have not briefed the application of Philippine law, they agree that Philippine law is more employer-friendly than California law (*see* Tr. at 36), from which it seems to follow (at least in the absence of argument or evidence to the contrary at this stage of the litigation) that Plaintiff's claim is likely sufficient under Philippine law as well.

Accepting all well-pled allegations in the complaint as true, Plaintiff alleges that (i) Plaintiff's relationships with current or recently-separated former employees represent a reasonably probable future economic opportunity; (ii) Defendant was aware of and intentionally interfered with those relationships, including by targeting, approaching, recruiting, or attempting to recruit Plaintiff's key engineering employees or recently-separated former key engineering employees, to develop competing products using highly sensitive knowledge and information; and (iii) such interference proximately caused substantial loss of revenues and other damage to Plaintiff's expected business. (*See*, *e.g.*, D.I. 1 ¶¶ 46, 79-83) Plaintiff also sufficiently alleges that Defendant's conduct was wrongful in light of the factors in the Restatement (Second) of Torts because, among other things, Plaintiff alleges that Defendant's conduct was intended to create a competitive disadvantage to Plaintiff (*see, e.g.*, D.I. 1 ¶ 82), and that Plaintiff and Defendant are competitors (*see, e.g.*, D.I. 1 ¶ 8). Defendant's arguments that Plaintiff fails to allege (i) with which "current and recently separated employees'" relationships Defendant interfered, (ii) which prospective economic relationships have been harmed by the alleged interference, and (iii) that Defendant acted maliciously or in bad faith are unpersuasive, as such allegations are not required to state a claim of interference with prospective economic advantage under Delaware law.

Turning to California law, it is unclear whether Plaintiff is attempting to allege ***negligent*** or ***intentional*** interference with prospective economic advantage.[14] In California, the two tort claims involve different elements. "The five elements for intentional interference with prospective

[14] For example, Plaintiff alleges "malice" and "conscious disregard," and that Defendants interfered with prospective economic advantage "maliciously, fraudulently, . . . oppressively, [and] with . . . wrongful intention." (D.I. 1 ¶ 84) But Plaintiff also alleges that Defendant "intentionally and/or negligently conspired to interfere with [Plaintiff's] prospective economic advantage." (D.I. 1 ¶ 82)

economic advantage are: (1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Youst v. Longo*, 729 P.2d 728, 733 n.6 (Cal. 1987). A claim for intentional interference with prospective economic advantage in California must also allege "that the defendant's conduct was wrongful by some legal measure other than the fact of interference itself." *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 950 (Cal. 2003). "An act is not independently wrongful merely because defendant acted with an improper motive." *Id.* at 953. The act must be "unlawful, that is, . . . proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Id.* at 954.

By contrast, "[t]he elements of negligent interference with prospective economic advantage are (1) the existence of an economic relationship between the plaintiff and a third party containing the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) the defendant's knowledge (actual or construed) that the relationship would be disrupted if the defendant failed to act with reasonable care; (4) the defendant's failure to act with reasonable care; (5) actual disruption of the relationship; and (6) economic harm proximately caused by the defendant's negligence." *Redfearn v. Trader Joe's Co.*, 230 Cal. Rptr. 3d 98, 111 (Cal. Ct. App. 2018).

Accepting all well-pled factual allegations in the complaint as true, Plaintiff has stated at least a claim for negligent interference with prospective economic advantage. The complaint alleges: (i) the former employees had an economic relationship with Plaintiff as a result of their employment; (ii) Defendant, as a direct competitor of Plaintiff, knew of that relationship;

(iii) Defendant reasonably would have known that the relationship would be disrupted if Defendant failed to act with reasonable care; (iv) Defendant failed to act with reasonable care by targeting, approaching, recruiting, or attempting to recruit Plaintiff's key engineering employees or former key engineering employees; (v) that failure to act with reasonable care disrupted the relationship by causing the former employees to terminate their employment agreements with Plaintiff; and (vi) the loss of those employees proximately caused economic harm to Plaintiff. (*See, e.g.*, D.I. 1 ¶¶ 8, 45-51, 55, 75, 79-80, 82-84)

As with the claim under Delaware law, Defendant's arguments regarding Plaintiff's failure to allege certain facts about specific current and recently separated employees' relationships, prospective economic relationships, and malice or bad faith fail to persuade the Court, as such allegations are not required to state a claim under California law.

Accordingly, because Plaintiff states a claim under either Delaware or California law, and the parties do not argue that there are material differences in Philippine law, Defendant's motion to dismiss is denied as to Count III of the complaint.

## V. CONCLUSION

For the foregoing reasons, the Court will grant Defendant's motion to dismiss Plaintiff's DTSA claim and deny Defendant's motion to dismiss the tortious interference claims. Plaintiff will have an opportunity to amend the dismissed count. An appropriate Order follows.